STATE *vs.* GEORGE W. BUCKNAM.

SAME *vs.* BION B. TIBBETTS.

SAME *vs.* WILLARD E. BAILEY.

SAME *vs.* HARLEY WORCESTER.

Washington.    Opinion January 23, 1896.

*Game.    Possession.    R. S., c. 30, § 12;    Stat. 1891, c. 95, § 4.*

Upon a complaint charging the defendants with having in their possession, at one time during the open season when deer may be lawfully killed, eighty-nine carcasses of deer, they not being market-men or provision dealers within the terms of the statute, the only question presented to the court for decision was whether R. S., c. 30, § 12, as amended by the Stat. 1891, c. 95, § 4, made such a possession an offense. *Held;* that the object of the statute is to prevent the decimation of game by limiting the time when it may be taken or killed to the months of October, November and December in each year. During these months, under certain restrictions unimportant here, deer, moose and caribou may be lawfully taken or killed, and the various provisions of the statute aim to compass this result; *Also,* that it does not intend to interfere with foreign game, dead or alive, brought within the State, at any time, or with game lawfully taken or killed here.

While the enactment, by its letter, makes the possession of more than one moose, two caribou and three deer at any time an offense, the context of it must not be overlooked in determining the scope and meaning of the whole statute. But one penalty for killing, having in possession and transporting

could have been intended, and that applies to the illegal capture of the game. *Held*; that the other provisions were intended to aid in the enforcement of that one, by making the possession evidence of illegal capture, and compel the person charged to explain his possession of what would directly point to an illegal taking of the game. In other words, compel him to have or handle game illegally taken or killed, by any person, at his peril.

Game illegally taken or killed subjects the possessor of it to the penalty for its illegal taking, just as if he had illegally taken it himself.

*Allen* v. *Young*, 76 Maine, 80, affirmed.

*Allen* v. *Leighton*, 87 Maine, 206, distinguished.

AGREED STATEMENT.

The parties agreed to the following statement:

"George W. Bucknam, Bion B. Tibbetts, Willard E. Bailey and Harley Worcester, all of Columbia Falls, in Washington county, on or before December 12th, 1894, had collected by purchase or otherwise, and had in their possession at said Columbia Falls, the carcasses of eighty-nine deer as follows: Said Bucknam, thirty-one; said Tibbetts and Bailey, twenty-one each; and said Worcester, sixteen carcasses. These they transported in the night time of December 12th from said Columbia Falls to Addison Point, three miles, not tagged as required by law, and put them down the lazaretto hatch of the schooner Monticello to be transported to Boston for sale, and they were so transported.

"For the purposes of this case it is admitted that said eighty-nine deer were lawfully killed in the open season of 1894; that each of said respondents during the open season of 1894, prior to said 12th day of December, had had in his possession the carcasses of, at least, three other deer; and that neither of said respondents were then and there market-men. Similar complaints in these cases were made against said other respondents, to which, upon arraignment, the said respondents each pleaded not guilty, waived an examination and were fined $1240, $840, $840 and $640, respectively, from which sentences each appealed and each recognized as ordered. One complaint to be copied and made a part of this case. The court upon the foregoing statement of facts are to determine whether the law applied to the said facts, no other defense being shown, would authorize

the jury to find the respondents guilty of the offense charged, or of having killed or destroyed said deer in violation of law ; if so, the cases to stand for trial, otherwise the respondents to be discharged.

F. I. Campbell,

County Attorney, for the State.

George W. Bucknam,

Bion B. Tibbetts,

Willard E. Bailey,

Harley L. Worcester,

Respondents, pro se."

In presence of
F. H. Thompson.

(Complaint.)

"State of Maine. Washington, ss. To J. T. Campbell, esquire, one of the trial justices within and for the county of Washington. Charles F. Corliss of Cherryfield, in said county, on the fourteenth day of February, in the year of our Lord one thousand eight hundred and ninety-five, in behalf of the State of Maine, on oath complains that George W. Bucknam of Columbia Falls, in said county of Washington, on the eleventh day of December, A. D., eighteen hundred and ninety-four, did have in his possession at Addison, in said county, parts of the carcasses of thirty-one dead deer; said George W. Bucknam not being then and there a market-man or provision dealer with an established place of business in said State, against the peace of said State, and contrary to the form of the statute in such cases, made and provided.

"Wherefore, the said Charles F. Corliss prays that the said George W. Bucknam may be apprehended, and held to answer this complaint, and further dealt with relative to the same as the law directs.

Charles F. Corliss."

*F. I. Campbell*, County Attorney, for the State.

*T. W. Vose*, filed a brief and argued :

The State being the owner of the game and fish, every person who hunts, catches, kills, destroys, buys, carries, transports, or has in his possession any game or fish, is subject to the

conditions, restrictions and limitations imposed; in other words, his title to the property is of a qualified character. *State* v. *Geer*, 61 Conn. 144.

The legislature may pass laws the effect of which is to impair or even destroy the right of property. Private interests must yield to public advantage. All property is held subject to the power of the state to regulate, or control its use, to secure the general safety and the public welfare. *Phelps* v. *Racey*, 60 N. Y. 14; *Butolph* v. *O'Reilly*, 74 N. Y. 521; *Wynehamer* v. *The People*, 13 N. Y. 391; *Cottrill* v. *Myrick*, 12 Maine, 229; *Lunt* v. *Hunter*, 16 Maine, 10; *Moulton* v. *Libbey*, 37 Maine, 472; *Weston* v. *Sampson*, 8 Cush. 347; *Dunham* v. *Lamphere*, 3 Gray, 268.

It has been the policy of this State ever since 1829 to assert control over the game and protect it from general destruction.

The statement of facts shows to what an extent the slaughter may be carried on. Here were four men, who had each had in his possession, before, all the carcasses the law would allow, clandestinely buying all the carcasses in the county, holding them until a favorable opportunity to ship them to a foreign market, and then, conscious of guilt, in the dead hours of the night hauling them untagged to a vessel and secreting them in the lazaretto,—eighty-nine carcasses.

Courts will arrive at the intention of the legislature by following step by step the various enactments and amendments leading up to the act before it for construction; and will assume that the legislature by the passage of an act affecting a citizen or his property intended to promote the public interests; and when the act admits of two constructions, one which makes it applicable in furtherance of those interests, that construction will be given to it which thus sustains it. *People* v. *Ewer*, 141 N. Y. 129. And an act which the legislature in its discretion has passed, if within its constitutional authority, is not the subject of judicial review. *People* v. *Gillson*, 109 N. Y. 389.

I cite as authority on the various points raised the following: *Am. Ex. Co.* v. *People*, 133 Ill. 149 (S. C. 23 Am. St. Rep. 641); *Allen* v. *Wyckoff*, 48 N. J. L. 90 (S. C. 57 Am. Rep.

548) ; *State* v *Wheeler*, 25 Conn. 290 ; *Com.* v. *Savage*, 155 Mass. 278 ; *Lawton* v. *Steele*, 119 N. Y. 226 ; *Brown* v. *Perkins*, 12 Gray, 89 : *Fisher* v. *McGirr*, 1 Gray, 1 ; *Com.* v. *Gilbert*, 160 Mass. 157, and cases. 28 Geo. II, Ch. 12. No person by statute however qualified could expose game for sale. 4 Bl. Com. 175.

*Jasper Hutchings*, for defendants.

The complaints in these cases, one of which is copied and made part of the cases, severally charge the respondents with having in possession, in open time, parts of the carcasses of a certain number of dead deer exceeding three. The complaints do not say how respondents came into possession of them, whether the deer were lawfully or unlawfully killed, with what intent respondents had them, or what they purposed to do with them. The charge is nakedly that of possession at a season when it was lawful, within certain limits, to kill deer.

Does this statute mean to make the possession alone of more than three carcasses of deer in open time a crime, as the draughtsman of these complaints seems to have supposed? Does it mean that if A and B lawfully kill three deer each and being in the lawful possession of the six carcasses, transfer the possession of them in open time to C by consent of all, that C thereby instantly becomes a criminal? This can hardly be what the statute means. Such a law would be unreasonable. The statute allows a man who has lawfully killed a deer to consume, give away or sell the carcass either in or out of the State. It would be difficult to find a statute which makes or undertakes to make the possession alone of property which has a legitimate use, in and of itself a crime. Ordinarily, possession when made criminal, is made so either because the possession is wrongfully got, or because the property had in possession is meant to be used for some wrongful purpose. The possession by one who is a receiver of stolen goods, the keeper of intoxicating liquor intended for unlawful sale in this State, are familiar examples of this. Even in the case of things that have no legitimate use, possession alone is not ordinarily, if ever, a crime. The pos-

session of counterfeit money for example, is criminal only when accompanied with an intent to utter it or to aid in its being uttered.

The prohibition against possession in excess of three carcasses is in the same sentence and paragraph, and is coupled with the unlawful killing of deer. If the statute meant to make simple possession in excess of three carcasses a crime, although lawfully killed, why did it provide and in the same paragraph, immediately following the prohibition against killing and having in possession, that "whoever has in possession, except alive, more than the aforesaid number . . . shall be deemed to have killed or destroyed them in violation of law?" The kind of possession, whatever it is, which is prohibited and made penal is punishable with the same penalty and in the same way as unlawful killing. If, therefore, possession alone is a crime, this last named provision is unnecessary and superfluous unless the statute means a double punishment of the same person, one punishment for killing and the other for having in possession, and this will hardly be contended.

It has been repeatedly asserted in both ancient and modern cases that judges may in some cases decide upon a statute even in direct contravention of its terms; that they may depart from the letter in order to reach the spirit and intent of the act. Frequently has it been said judicially that a thing within the intention is as much within the statute as if it were within the letter, and a thing within the letter is not within the statute, if contrary to the intention of it. *Holmes* v. *Paris*, 75 Maine, 559, and authorities there cited.

If, however, our legislature did mean to make it a crime for a person to have in open time the carcasses of more than three deer, which were lawfully killed, then we submit that the statute is so far of no effect; because it is not reasonable, because it deprives a man of liberty and property without due process of law, and, in its application to the agreed facts in this case, would be a violation of the laws of the United States which give to congress sole power to regulate interstate as well as foreign commerce. See also Const. of Maine, Art. 4, part. III, § 1.

If the prosecution are right in their contention as to the meaning of the statute, and the charge in these complaints really amounts to a crime, then it would follow that if a hunter in the woods should leave his game for safe keeping, which he had lawfully killed and had, with another hunter, who was in the lawful possession of game which he had killed, and go out to get a doctor to set a broken leg, the hunter left in the woods in charge and possession of the game of the two men, if the game combined amounted to more than three deer, would be subject to a criminal prosecution for having them.

As contended by the State, the statute in its application to the agreed facts in this case would violate the United States law with respect to interstate commerce. Counsel cited: *Leisy* v. *Hardin*, 135 U. S. 100; *Bowman* v. *Chicago & N. W. R. R. Co.* 125 U. S. 465; *Smith* v. *State of Alabama*, 124 U. S. 465; *Robbins* v. *Taxing District of Shelby County*, 120 U. S. 489; *Welton* v. *Missouri*, 91 U. S. 275; *The Daniel Ball*, 10 Wall. 557. That it is not necessary that goods should be in transit in order to be under the protection of Interstate Commerce law is shown by some of the above cited cases, especially *Robbins* v. *Taxing District of Shelby County*, supra.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

HASKELL, J. The complaints charge the defendants with having in their possession, at one time during the open season when deer may be lawfully killed, eighty-nine carcasses of deer, they not being market-men or provision dealers within the terms of the statute. The only question presented is whether the statute, R. S., c. 30, § 12, as amended by the act of 1891, c. 95, § 4, makes such possession an offense. It reads as follows:

"No person shall take, kill, destroy or have in possession between the first days of October and January more than one moose, two caribou and three deer, under a penalty of one hundred dollars for every moose, and forty dollars for every caribou or deer, or parts thereof, so taken, killed, destroyed or in possession in excess of said number. Whoever has in posses-

sion, except alive more than the aforesaid number of moose, caribou or deer or parts thereof, shall be deemed to have killed or destroyed them in violation. of law. But nothing in this section shall prevent any market-man or provision dealer, having an established place of business in this State, from purchasing and having in possession at his said place of business, not exceeding one moose, two caribou and three deer lawfully caught, killed or destroyed, or any part thereof, at one time, and selling the same at retail in open season to his local customers."

The object of the statute is to prevent the decimation of game by limiting the time when it may be taken or killed to the months of October, November and December; in each year. During these months, under certain restrictions unimportant here, deer, moose and caribou may be lawfully taken or killed, and the various provisions of the statute aim to compass this result. They do not .intend to interfere with foreign game, dead or alive, brought within the State, at any time, or with game lawfully taken or killed here. While the enactment, by its letter, makes the possession of more than one moose, two caribou and three deer at any time an offense, the context of it must not be overlooked in determining the scope and meaning of the whole statute. But one penalty for killing, having in possession and transporting could have been intended ; and that applies to the illegal capture of the game. The other provisions were intended to aid in the enforcement of that one, by making the possession evidence of illegal capture, and compel the person charged to explain his possession of what would directly point to an illegal taking of the game. In other words, compel him to have or handle game illegally taken or killed, by any person, at his peril. Game illegally taken or killed subjects the possessor of it to the penalty for its illegal taking, just as if he had illegally taken it himself. This interpretation best comports with the true intent and purpose of the statute, and works out a reasonable and just application of its provisions, at the same time obviating various difficulties in the way of a different construction of it.

Nor is this view without authority. In *Allen* v. *Young*, 76 Maine, 80, it was held that, although this very statute prohibited the transportation of the hide or carcass of deer, moose or caribou, during close time, yet, such transportation was not illegal if the game had been lawfully killed. The court say :

" The question is whether, if deer are killed during the time when it is lawful to do so, it is a crime to carry or transport the hides or carcasses from place to place in this state during the time when it is unlawful to kill them.

" We think it is not. True, the transportation at such a time seems to be within the letter of the law ; but we think such could not have been the intention of the legislature. We can see no possible motive for making such transportation a-crime. We can readily see that it would be in furtherance of the purposes of the act to make such transportation prima facie evidence of guilt, and thus throw the burden of proof upon the party to show his innocence, as is done in section five with respect to possession ; but we fail to see any motive for making the mere transportation of the hide or carcass of a deer from one place to another a crime when the deer has been lawfully killed and is lawfully in the possession of the one who transports it. Certainly one may reasonably doubt whether such could have been the intention of the legislature ; and the act being a penal one, a reasonable doubt is sufficient to make it the duty of the court to adopt the more lenient interpretation, and construe the term 'such animal,' as meaning an animal unlawfully killed, as was done in construing a similar statute in *Com.* v. *Hall*, 128 Mass. 410." See also *Bennett* v. *American Express Co.* 83 Maine, 236.

In Michigan, 71 Mich. 325, *People* v. *O'Neil*, the defendant was convicted, in the lower court, for having in possession for the purpose of selling a large number of quail in violation of a statute that prohibits selling, exposing for sale, or having in possession for the purpose of selling such birds after eight days from the time when the killing of such birds was prohibited ; and on certiorari to the supreme court the conviction was reversed by construing the statute to apply to birds only, killed

in violation of law. The court says: "So construed the statute is reasonably adapted to carry out its objects, and is free from all constitutional difficulty." The court then quotes at length from *Allen* v. *Young*, supra, with approval. Campbell, J., in a concurring note says: "I do not think it would be competent for the legislature to punish the possession of game which was lawfully captured or killed. Having become private property, it cannot be destroyed or confiscated, unless it becomes unfit for use, any more than other property can be destroyed. I do not think the cases to the contrary are reasonable or sound."

In Pennsylvania, 139 Pa. 298, *Commonwealth* v. *Wilkinson*, the defendant was convicted of having in his possession, during close time, twenty quail that were not killed in the state, but had been lawfully killed in Missouri and brought into the state. The indictment was under a statute that prohibited the killing, exposing for sale, or having in possession, after the same had been killed, quail, during a specified close time of each year. The court reversed the conviction upon the ground that the act applied only to quail killed in the state out of season. The court says: "A careful reading of the language of the act shows that it applies only to game killed in this State out of season." . . . "The meaning of the act, as we view it, is that no quail shall be killed in this State between the dates specified, and no person shall have in his possession, or offer for sale any quail so killed in this State."

In Oregon, 21 L. R. A. 478, *State* v. *McGuire*, the defendants were prosecuted for having in possession and offering for sale certain salmon during close time, under a statute that prohibited the same. The defense was that the salmon had been taken in open time and kept in cold storage for sale in close time when they would bring an enhanced price. This defense was excluded in the trial courts and convictions ordered. On appeal, the decision below was reversed upon the ground that the act applied only to salmon illegally taken. *Allen* v. *Young*, supra, was cited with approval by the court and the opinion is an elaborate one.

There are cases contra. *Phelps* v. *Racey*, 60 N. Y. 10;

*Mayner* v. *People*, 97 Ill. 333. We are aware of our own decision, *Allen* v. *Leighton*, 87 Maine, 206, but do not regard that as an authority upon the question here considered. This question was not considered in that case.

*Complaints quashed.*