## PEOPLE v. FARGO.

(Supreme Court, Appellate Division, First Department.	April 15, 1910.)

1. GAME (§ 7*)—POSSESSION OF DEER.

Laws 1900, c. 20, §§ 4, 8, as amended by Laws 1906, c. 478, and Laws 1907, c. 666, prohibit the possession of deer between certain dates, make such possession prima facie evidence that the same was unlawfully taken by the possessor, and provide that the possession of deer or venison by a common carrier while engaged in business of such carrier, unaccompanied by the owner, shall constitute a violation of the law.	Section 141, added by Laws 1902, c. 194, provides that whenever in the act the possession of game, etc., is prohibited, reference is had equally to such game, etc., coming from without the state as to that taken within the state. *Held*, that under such provisions, aided by Lacey Act May 25, 1900, c. 553, 31 Stat. 187, 188 (U. S. Comp. St. 1901, pp. 290, 3181), the possession by a dealer of game taken without the state and brought into the state contrary to the provisions of the statute is unlawful.

[Ed. Note.—For other cases, see Game, Cent. Dig. §§ 6, 7; Dec. Dig. § 7.*]

2. COMMERCE (§ 33*)—INTERSTATE COMMERCE—WHAT CONSTITUTES.

The transportation of goods from one state into or through another state constitutes interstate commerce, which is under the exclusive control of Congress, and cannot be interfered with by a state, except with the consent of Congress.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81; Dec. Dig. § 33.*]

3. COMMERCE (§ 15*)—INTERSTATE COMMERCE—SUBJECTS—GAME.

Game may be the subject of interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 15.*]

4. COMMERCE (§ 33*)—DELIVERY TO CONSIGNEE UPON ARRIVAL.

Laws 1900, c. 20, §§ 4, 8, as amended by Laws 1906, c. 478, and Laws 1907, c. 666, prohibit the possession of deer between certain dates, etc., and provide that such possession by a common carrier unaccompanied by the owner shall constitute violation of the law.	Section 141, added by Laws 1902, c. 194, provides that, whenever in this act the possession of game is prohibited, reference is had equally to such game coming from without the state as to that taken within the state.	Lacey Act May 25, 1901, c. 553, § 5, 31 Stat. 188 (U. S. Comp. St. 1901, p. 3182), provides that game transported into any state shall, upon arrival therein, be subject to the laws of such state, to the same extent as though it had been there produced.	*Held* that, in view of the latter statute, the provisions of the state statute do not attach to a shipment of foreign game while in transit, in possession of a common carrier, and until its arrival at the point of destination and delivery there to the consignee.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 33.*]

Appeal from Special Term, New York County.

Action by the People of the State of New York against James C. Fargo, as president of the American Express Company.	From an order granting plaintiff motion for judgment on the pleadings and from the judgment thereon entered, defendant appeals.	Reversed.

For former report, see 63 Misc. Rep. 381, 118 N. Y. Supp. 454.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, McLAUGHLIN, and DOWLING, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edmund L. Baylies, for appellant.
· William Chilvers, for respondent.

SCOTT, J.  The defendant, a common carrier, appeals from a judgment directed upon the pleadings. The complaint states six causes of action; judgment having been directed upon five of them. As to each cause of action upon which judgment was directed the defendant admitted that on a given date there was delivered to the American Express Company without the state of New York, for transportation into said state, certain deer lawfully killed without the state of New York, and that, in the course of the transportation of said deer and before the determination thereof, the said American Express Company, solely as a common carrier, had the custody and control of said deer within said state, and that said deer were unaccompanied by the owner thereof. As to one cause of action the admission is that the deer, being lawfully killed without the state of New York, were transported into and through said state and into the state of New Jersey. The plaintiff's claim is that these facts rendered the express company liable for the penalties prescribed by the forest, fish, and game laws of this state. The provisions of the law which were in force at the dates mentioned in the pleadings, and under which the express company's liability is asserted, are sections 4 and 8 of chapter 20 of the Laws of 1900, as amended by chapter 478 of the Laws of 1906 and chapter 666 of the Laws of 1907, and section 141, which was added by chapter 194 of the Laws of 1902.

These sections, so far as applicable, read as follows:

"Sec. 4. Possession of deer or venison. Wild deer or venison shall not be possessed or sold from November twenty-fifth to September thirtieth inclusive. Possession thereof from midnight of the fifteenth to the twenty-fourth of November shall be presumptive evidence that the same was unlawfully taken by the possessor."

"Sec. 8. Transportation. Deer or venison killed in this state shall not be transported from or through any county, or possessed for that purpose except as follows: One carcass or a part thereof may be transported from the county where killed when accompanied by the owner. No person shall transport or accompany more than two deer in any year under this section. Possession of deer or venison by a common carrier or by any person in its employ while engaged in the business of such common carrier, unaccompanied by the owner, shall constitute a violation of this section by such common carrier. This section does not apply to the head, feet or skin of deer if carried separately. Deer or venison killed in this state shall not be accepted by a common carrier for transportation from November nineteenth to September thirtieth, both inclusive, but if possession is obtained for transportation after September thirtieth and before midnight of November eighteenth, it may, when accompanied by the owner, lawfully remain in the possession of such common carrier the additional time necessary to deliver the same to its destination."

"Sec. 141. Whenever in this act the possession of fish or game, or the flesh of any animal, bird, or fish, is prohibited, reference is had equally to such fish, game or flesh coming from without the state as to that taken within the state. * * *"

It is well settled that under the provisions above quoted, aided by the federal statute known as the "Lacey act" (Act May 25, 1900, c. 553, 31 Stat. 187 [U. S. Comp. St. 1901, pp. 290, 3181]), the possession by a dealer of game taken without the state and brought into this

state contrary to the provisions of the statute is unlawful. Silz v. Hesterberg, 184 N. Y. 131, 76 N. E. 1032; same case sub nom. New York ex rel. Silz v. Hesterberg, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. Ed. 75. It is urged, and with force, that the sections of the act above quoted do not apply to common carriers having game in their possession only for the purpose of transportation from another state into this state. We consider it unnecessary to discuss that question because there seems to be another controlling reason why the present judgment cannot be upheld. The transportation of goods from one state into or through another state constitutes interstate commerce, which is under the exclusive control of the Congress, and cannot be interfered with by a state, except with the consent of the Congress. There appears to be no doubt that game may be the subject of interstate commerce. New York ex rel. Silz v. Hesterberg, supra; Bennett v. American Express Company, 83 Me. 236, 22 Atl. 159, 13 L. R. A. 33, 23 Am. St. Rep. 774. In People v. Buffalo Fish Company, 164 N. Y. 93, 58 N. E. 34, 52 L. R. A. 803, 79 Am. St. Rep. 622, a grave doubt was expressed whether an act forbidding a dealer to have in his possession fish taken in a foreign state was not an unlawful interference by the state with interstate commerce. To meet that objection the so-called Lacey act, cited supra, was passed. Its fifth section reads as follows:

"Sec. 5. That all dead bodies, or parts thereof, of any foreign game, animals, or game or song birds, the importation of which is prohibited, or the dead bodies, or parts thereof, of any wild game animals, or game or song birds, transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such animals or birds had been produced in such state or territory; and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise. This act shall not prevent the importation, transportation, or sale of birds or bird plumage manufactured from the feathers of barnyard fowl."

It will be observed that under this act the state law is permitted to attach to foreign killed game "upon arrival in such state or territory," and the respondents' argument is that game in possession of a common carrier for transportation becomes subject to the game law of this state the moment it crosses the state line. This contention seems to be disposed of by the construction given by the Supreme Court of the United States to a similar statute enacted in identical language, except as to the subject-matter. Act Aug. 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177). This act, known as the "Wilson act," relates to liquors, as the Lacey act does to game, and both provide that the point at which state jurisdiction, under the police power, shall be permitted to attach to interstate shipments, is "upon arrival" in the state. In the case referred to, the plaintiff, the servant of a common carrier in Iowa was indicted and convicted for moving a package containing liquors which had been brought into Iowa from Indiana. Except that the package was the subject of interstate commerce, the Iowa statute justified the conviction, and the Wilson act was invoked to uphold it. The Supreme Court discussed the meaning and effect of the Wilson law at some length, concluding as follows:

"We think that, interpreting the statute (the Wilson act) by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee." Rhodes v. Iowa, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088.

The same construction was given to the Wilson act in Adams Express Co. v. Kentucky, 214 U. S. 218, 29 Sup. Ct. 633, 53 L. Ed. 972, which reaffirmed the rule stated in Rhodes v. Iowa, supra. The Lacey act and the Wilson act are not to be distinguished. Except that they deal with different commodities, their purpose is the same and their language is identical, and we are bound to give to the one the construction that the Supreme Court of the United States has given to the other. It follows that the forest, game, and fish law above quoted does not attach to a shipment of foreign game while in transit, in possession of a common carrier, and until its arrival at the point of destination and delivery there to the consignee.

The judgment appealed from is therefore reversed, with costs to the appellant to abide the event, and plaintiff's motion for judgment on the pleadings denied, with $10 costs. All concur.