THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ELDON
BISBEE, Defendant.

First Department, December 21, 1917.

**Conservation Law — action to recover penalty for violation of section
191 — possession without permit of wild deer lawfully killed in
State of Maine.**

The possession of wild deer or venison lawfully taken in the State of Maine
and transported to this State for the personal use and consumption of
the defendant, without a shipping permit issued by the State Conservation
Commission, does not constitute a violation of the provision of section
191 of the Conservation Law, providing that " Wild deer or venison
lawfully taken may be possessed from October first to November
twentieth, both inclusive."

It is only under the second sentence of said section, providing that " A person
may possess such deer or venison from November twenty-first to
February first, both inclusive, provided a license so to do shall first be
obtained from the Commission," that it is necessary to procure a license
in order that possession shall be lawful.

LAUGHLIN, J., dissented, with opinion.

SUBMISSION of a controversy upon an agreed statement of
facts pursuant to section 1279 of the Code of Civil Procedure.

The essential facts agreed upon by the parties (the Attorney-
General acting in behalf of the State) are as follows: " The
defendant Eldon Bisbee, a citizen of the United States and a
resident of the City, County and State of New York, shipped
via American Express Company, a common carrier, from the
State of Maine, consigned to the defendant at his residence in
the City of New York, two wild deer, to wit:    One doe and
one buck, the latter having horns more than three inches in
length.

" That both said deer were lawfully taken by said defend-
ant in the State of Maine, pursuant to a license issued by
said State which authorized said defendant to take, possess
and ship out of said State, two wild deer whether doe or buck,
during the open season.

" That said buck and doe were shipped and arrived in the
State of New York in such manner and condition that they
were entirely exposed to view and attached to each carcass was

a tag taken from said license issued to defendant by the State of Maine, upon which tag was stated the name of the defendant, the number of the license, and the fact that said buck and doe were lawfully taken by defendant in, and lawfully shipped by him from the State of Maine.

" That said doe was brought into the State of New York by the American Express Company on or about the 6th day of October, 1916, and was delivered by said American Express Company on or about said date to agents of said defendant duly authorized to receive the same for and on behalf of defendant at his residence in the City of New York. That said doe was, on or about the 7th day of October, 1916, seized by duly authorized agents of the Conservation Commission of the State of New York and taken out of the possession of an agent of the defendant in the said City of New York, into whose possession it had been delivered by agents of the defendant for the personal use and consumption of the defendant and his family.

" The said buck was brought into the State of New York by said American Express Company on or about the 7th day of October, 1916. That on or about the 10th day of October, 1916, an agent of the defendant duly authorized thereto, called at the office of the American Express Company, signed a receipt for said buck and was about to receive the same when it was seized, on the premises of said American Express Company, by a duly authorized agent of the Conservation Commission.

" That at all the times herein mentioned, the said buck and doe were wholesome articles of food and were shipped into this State solely for the personal use and consumption of the defendant, and were not taken, possessed or transported for the purpose of sale, or being offered for sale, or for transportation, except as above stated.

" That neither said buck or doe had attached thereto shipping permits issued by the Conservation Commission of the State of New York.

" The plaintiff claims that the shipping into the State of New York without having attached to the shipment a shipping permit issued by the Commission as provided by Section 178, and the possession of the same, constitute a violation of the

Conservation Law;* and that the seizure was lawful; and that by reason of such acts the plaintiff is entitled to collect from the defendant the sum of $400.

" Defendant claims that such acts do not constitute a violation, and that if such acts are made illegal by the Conservation Law it is null and void, in that it contravenes rights secured to him by the State and Federal constitutions. Especially, that it violates the Commerce Clause and the rights secured by the Fourteenth Amendment."

*B. F. Sturgis*, for the plaintiff.

*Abraham Freedman*, for the defendant.

SCOTT, J.:

In our opinion the submitted case presents but a single question for our determination.

The gravamen of the offense charged against defendant is that " neither said doe or buck had attached thereto shipping permits issued by the Conservation Commission of the State of New York."

The only question left open, under former decisions of this court, is whether or not the " possession " of the deer by defendant, without a shipping permit, constituted an offense.

In *People* v. *Bisbee* (173 App. Div. 127) we had before us a precisely similar question as to partridges shot in Maine and shipped to this State, except that the question of possession by the consignee was not involved. It was held that there was no illegality " in shipping them to the State of New York until they [the birds] had arrived at their destination and a delivery made to the defendant."

In thus holding we followed *People* v. *Fargo* (137 App. Div. 727) which discussed at some length both the State Game Laws and the so-called Lacey Act (31 U. S. Stat. at Large, 187, chap. 553).

Up to the point, therefore, of the delivery of the deer to

---

* See Consol. Laws, chap. 65 (Laws of 1911, chap. 647), § 178, added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508, and Laws of 1916, chap. 521; Id. § 182, added by Laws of 1912, chap. 318, as amd. by Laws of 1916, chap. 521.— [REP.

the defendant we are constrained to hold that no illegal act is established as against him. It remains only to consider whether possession by him after delivery was unlawful. This must be determined solely by reference to the law of this State, as no Federal question is presented.

Section 191 of the Conservation Law provides in part as follows: " § 191. Possession of wild deer or venison. Wild deer or venison lawfully taken may be possessed from October first to November twentieth, both inclusive. A person may possess such deer or venison from November twenty-first to February first, both inclusive, provided a license so to do shall first be obtained from the Commission." (Consol. Laws, chap. 65 [Laws of 1911, chap. 647], § 191, added by Laws of 1912, chap. 318, as amd. by Laws of 1916, chap. 521.)

The remainder of the section is not relevant to the question now under consideration. It will be seen that the section covers the possession of deer during two seasons, one from October first to November twentieth, and the other from November twenty-first to February first. It is only as to the second season or period that it is necessary to procure a license in order that possession shall be lawful. As to the first season or period (which covers the acts charged as unlawful against defendant) the right of possession is absolute provided only that the deer shall have been "lawfully taken," as it is conceded that the deer in question were.

When the Legislature has explicitly provided as to one season that a permit must be obtained, and has made no similar provision as to the other season we see no escape from the conclusion that it was intended to allow possession from October first to November twentieth without the necessity of procuring a permit.

It follows that upon the agreed facts no unlawful act is established on the part of the defendant, and he is entitled to judgment accordingly, with costs.

CLARKE, P. J., DOWLING and SMITH, JJ., concurred; LAUGHLIN, J., dissented.

LAUGHLIN, J. (dissenting):

I agree with Mr. Justice SCOTT that the decision made by this court in *People* v. *Bisbee* (173 App. Div. 127) forecloses

any further consideration here of the question as to whether a penalty may be imposed upon the defendant for *shipping* the deer into the State without a permit; but I think that *possession* here of the deer by the defendant without having obtained a shipping permit as required by subdivision 3 of section 178 of the Conservation Law (Consol. Laws, chap. 65 [Laws of 1911, chap. 647], added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508) rendered such possession illegal and subjects him to the penalty demanded in the submission.

It is not expressly recited in the submission that the defendant did not accompany the deer, but the submission has been argued on the theory that he did not, and since they were transported by the express company, and at different times only a few days apart, it is to be assumed that such was the fact. It is expressly stipulated that the *doe* was *delivered* to the defendant, but it was evidently intended by the submission to leave open for argument the question of law as to whether on the facts stipulated the *buck* was *delivered* to him. The deer were consigned to the defendant at his residence in New York city and his agent called at the express office and signed a receipt for the buck and then, it is recited in the submission, as the agent " was about to remove the same " it was seized *on the premises of the express company* by an agent of the Conservation Commission. That, I think, constituted a delivery to the defendant. There could be delivery on as well as off the premises of the express company.

It is quite clear, I think, that the possession of the *doe* by the defendant without having obtained a permit for shipping her into the State was unlawful, and although I have some doubt with respect to the lawfulness of the possession of the *buck* without such permit having been obtained, I am of opinion that such was the intention of the Legislature and that the statute should be so construed.

Section 176 of the Conservation Law (added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508) makes it unlawful, among other things, for any person to have in his possession at any time a wild deer except as permitted by the Conservation Law. It was competent for the Legislature to provide that there should be no open season for taking wild

game in this State and to render it unlawful for any person at any time to have in his *possession* such wild game whether taken within or without the State. (*People* v. *Bootman,* 180 N. Y. 1; *People ex rel. Hill* v. *Hesterberg,* 184 id. 126; affd., *sub nom. Silz* v. *Hesterberg,* 211 U. S. 31.) It was, therefore, competent for the Legislature to provide an open season with such restrictions as it saw fit to prescribe. It has provided no open season for does. Therefore, were it not for other provisions of the Conservation Law which permit the importation of wild game during both the open and the closed seasons here, and without restricting the importation to game which might lawfully be taken here during the open season, the *possession* here at any time of game not permitted by our law to be taken at any time would be unlawful. It necessarily follows that in permitting the importation of game during the closed season the Legislature could make any regulation or restriction therefor which it saw fit to make or to impose. If, therefore, the defendant had imported the deer during the closed season here it is perfectly clear, I think, that it would be no defense to his possession that the Legislature in giving its consent to such possession had required that before the deer should be shipped into the State he should obtain a permit from the Conservation Commission, for the possession having been lawfully prohibited *excepting* as authorized, the defendant could not claim that his possession was lawful unless he complied with the conditions imposed by the Legislature to make it lawful. The only open season prescribed for taking wild deer in this State is for *bucks* having horns not less than three inches in length, and they are by section 190 of the Conservation Law (added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508; Laws of 1914, chap. 92, and Laws of 1916, chap. 521) permitted to be taken in wholly inclosed deer parks in certain counties from October first to November fifteenth, inclusive.

With respect to deer lawfully taken ˙here during the open season the Legislature has provided in subdivision 3 of section 178 that such deer may be transported within or from the State otherwise than by common carrier or parcel post during the open season, and that the taker may transport such deer within or from the State by a common carrier, .other than

parcel post, during the open season *provided* the deer or the package containing it shall have attached thereto before shipment a shipping permit issued by the Conservation Commission with the blanks properly filled in. It will, therefore, be seen that a shipment of deer lawfully taken *within* the State *by a common carrier* is unlawful unless a shipping permit therefor has been obtained. There is no room for contention, therefore, that there is any discrimination in the statutory provisions with respect to a shipping permit against deer taken without the State, for in both instances the same shipping permit is required.

By subdivision 4 of section 178 (added by Laws of 1912, chap. 318, as amd. by Laws of 1916, chap. 521) it is provided that a taker may import into the State deer taken without the State *during the closed season here* provided the deer has been lawfully taken and may be lawfully brought from the place where taken, and provided he accompanies the same and has with him *a license* issued by the Conservation Commission permitting such transportation into the State, and such taker is permitted to ship deer lawfully taken elsewhere into the State by common carrier, other than parcel post, provided he obtains *a shipping permit* therefor as required by subdivision 3 of section 178, which is precisely the same shipping permit required of one lawfully taking deer here for shipment within or from the State. Thus the Legislature has conferred the *privilege* of bringing deer into the State during the closed season, which it might have withheld, and has imposed no limitation with respect to whether such deer could be lawfully taken here at any time.

With respect to deer lawfully taken without the State and which may be lawfully brought from the place where taken the Legislature has further provided in said subdivision 4 that the taker may bring the same into the State *during the open season here* if he accompanies the same or may ship the same into the State by common carrier, other than parcel post, *provided* he obtains a shipping permit as required by subdivision 3 of section 178.

By section 381 of the Conservation Law (added by Laws of 1912, chap. 318, as amd. by Laws of 1913, chap. 508) it is expressly declared, among other things, that where the posses-

sion of wild game here is unlawful possession of the same species " coming from or taken without the State, shall be deemed to be and is, except as otherwise expressly provided herein, unlawful." It is evident that the word "unlawful" as first used in that section relates to deer taken here and, therefore, it is manifest that it was intended to declare the possession of deer here taken without the State to be unlawful if it would have been unlawful had the deer been taken here, unless the provisions of the Conservation Law with respect to obtaining possession of imported deer are complied with. Therefore, I think, in any event, the defendant is unable to justify his possession of the doe without complying with the condition with respect to obtaining a permit for the importation thereof since the possession of a doe taken here at any time is unlawful. Moreover it will thus be seen that the Legislature has by subdivision 4 of section 178 fully covered the subject of importing and possessing here deer taken without the State and imported during both the open and closed seasons. For this reason I am of opinion that the provisions of section 191 (added by Laws of 1912, chap. 318, as amd. by Laws of 1916, chap. 521) quoted in the opinion of Mr. Justice SCOTT should not be construed as applying to *all* deer *lawfully taken* whether within or without the State and that they were intended to be limited and should be limited to deer lawfully taken within the State. With respect to such deer it is therein provided that they may be possessed from October first to November twentieth, both inclusive, and that they may be possessed thereafter until and including the first of February, provided a license therefor be obtained as therein prescribed. That section contains a further provision rendering lawful the possession of deer by a common carrier the necessary time after midnight of November sixteenth to enable the carrier to deliver it provided it has been delivered to the carrier after the first of October and before that time, and also provides that possession of deer or venison from November sixteenth to February first, both inclusive, shall be presumptive evidence that the same was unlawfully taken. Those provisions indicate that the construction I have given is the true construction, for they do not, I think, apply to deer lawfully imported by common carrier into the State as authorized by subdivision 4 of section 178. With

respect to deer lawfully imported from without the State the Commission, provided the law has been observed, will have a record by the granting of the license to import it, if accompanied by the taker, and by the granting of the shipping permit if brought in by common carrier; and it would be unreasonable to hold that with respect to such deer that may be lawfully imported at any time possession from October first and after November sixteenth for the time required for delivery should be deemed lawful which by necessary implication would require a holding that possession by a carrier at any other time would be deemed unlawful. Those provisions are applicable only to deer taken here. Likewise it would be an unreasonable construction to hold that the possession at any time of deer taken without the State would be presumptive evidence that the same was unlawfully taken. That provision relates to deer taken here for the possession of which a license could be obtained for the period specified. The Legislature having provided that deer lawfully taken *within* the State cannot be lawfully shipped by common carrier without a shipping permit acted, I think, fully within its authority in prescribing that deer lawfully taken *without* the State could not be brought into the State and possessed here without a like shipping permit. No shipping permit having been obtained for either of the deer, the defendant, I think, is liable for the penalty.

I am of opinion, therefore, that the plaintiff should have judgment as prayed for in the submission.

Judgment ordered for defendant, with costs. Order to be settled on notice.