STATE OF NEBRASKA, APPELLANT, v. FRANK P. ALLEN, APPELLEE.

66 N. W. 2d 830

Filed November 12, 1954. No. 33579.

 

*James F. Brogan,* for appellant.

*Deutsch & Jewell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This cause arose in the county court of Madison County. An amended complaint was filed therein on January 24, 1952. The amended complaint charged the defendant, Frank P. Allen, in 15 counts with the unlawful possession on November 7, 1951, of game birds, namely, pheasants, and also with the unlawful transportation

of the same on November 7, 1951. To the amended complaint the defendant entered a plea of not guilty. The case proceeded to trial on January 24, 1952. The State introduced evidence and rested; the defendant introduced no evidence. At the conclusion of the State's evidence, the defendant moved for a dismissal of all the counts of the amended complaint. The county court sustained this motion.

On or about May 5, 1952, the defendant filed an application in the county court alleging in substance as follows: (1) That on November 7, 1951, peace officers of the state unlawfully took from the possession of the defendant 15 pheasants and other food items while the same were in transit in the care of a common carrier at the incidence of the defendant; that the pheasants were actually taken and killed in the State of South Dakota; and that the State of Nebraska at no time ever had jurisdiction over the same. (2) That at the trial held January 24, 1952, said peace officers and the State produced the pheasants and other food items, identified them as exhibits, and offered the same into evidence, the result being that the same came into the possession, control, and keeping of the court. (3) That the pheasants were used as evidence upon the trial. (4) That solely because of the unlawful acts of the peace officers of the state the pheasants were taken from the possession of the defendant on November 7, 1951. (5) That the defendant was entitled to the immediate possession of the pheasants and the food items so taken by the peace officers of the state.

To the above application of the defendant the State, by the deputy county attorney of Madison County, filed objections, the material allegations of which are in substance as follows: (1) That under the provisions of sections 37-606, 37-607, and 37-608, R. R. S. 1943, all items requested to be returned to the defendant were either contraband or subject to seizure as being part of a contraband shipment, and were contraband because

the same were introduced into evidence and each and every one of the pheasants showed visible shot marks. (2) Counts 16 to 30 of the amended complaint dealing with unlawful possession of pheasants were dismissed by the county court on the theory that the court had no jurisidiction over the pheasants because they were taken in South Dakota. (3) That there was no evidence that the same were taken in South Dakota, except for the markings on cartons and tags used in the attempted shipment of the pheasants. (4) That sections 37-213, 37-303, and 37-304, R. R. S. 1943, clearly apply to game birds such as pheasants. (5) That the amended complaint was dismissed at the conclusion of the State's evidence, the defendant not introducing evidence to show that the pheasants were lawfully taken in this state or any other state. (6) That the defendant could, by means of an independent proceeding, apply for the possession of the pheasants, the remedy of replevin being available. (7) That the county court erred in dismissing counts 16 to 30 of the amended complaint after all of the 15 pheasants bearing shot marks had been exhibited to the court and the presumption obtained that the pheasants had been unlawfully taken in Nebraska, and the burden to prove otherwise then was on the defendant.

On June 28, 1952, the county court entered an order in substance as follows: (1) That the defendant was entitled to the possession of the pheasants and other food items taken by the peace officers. (2) That at the conclusion of the trial the deputy county attorney, an officer of the court, removed the pheasants and other food items from the physical presence of the court for the sole purpose of placing them in refrigeration to prevent deterioration by reason of which fact it was physically impossible for the court at that time to deliver the pheasants and other food items to the defendant. (3) That it was necessary that the deputy county attorney first return the pheasants and other food items to the physical custody of the court in the county court room

in the court house at Madison in as good condition as when removed, as far as humanly possible; that he do so within a reasonable time; and that 20 days constituted a reasonable time, which would be not later than July 18, 1952. It was ordered that, in compliance with this order, the pheasants and other food items be delivered to the defendant.

On July 8, 1952, the State filed a petition in error in the district court. The principal allegations were in substance as follows: That in a proceeding before the county judge of Madison County 15 pheasants were offered in evidence, together with other food items in the case of State v. Allen; and on June 28, 1952, an order was made by the county court to deliver to the defendant the pheasants so taken as above set forth. A transcript of the proceedings of the county court was attached to the petition in error, marked as an exhibit, and made a part thereof. The State set forth that error intervened in the proceedings as appears on the face of the record in the following particulars: (1) That subsequent to the judgment of dismissal, the county judge erroneously ordered the 15 pheasants and other food items, offered in evidence by the plaintiff in error, delivered to the defendant. (2) That said order was erroneous for the reason that the pheasants were contraband within the meaning of sections 37-606, 37-607, and 37-608, R. R. S. 1943, and could only be disposed of according to the provisions of section 37-608, R. R. S. 1943. (3) That other food items, except the pheasants, were subject to confiscation under section 37-607, R. R. S. 1943. (4) That the 15 pheasants here involved were contraband for the reason that each and every one of them bore visible shot marks. (5) That the defendant in such a case has a clear and adequate remedy at law to determine his property rights in the property so taken.

On July 14, 1952, the defendant filed an answer to the State's petition in error in substance as follows: (1) That the plaintiff's petition in error failed to state facts

sufficient to justify a modification or reversal of the order of the county court. (2) The petition in error demonstrated on its face that the 15 pheasants and other food items were offered in evidence in the county court and thereby came into possession of the court, and the State had no substantial interest in the disposition of the same. (3) That the pheasants referred to were taken in South Dakota in accordance with the laws of that state, and that the State of Nebraska had no jurisdiction over game taken in a foreign state. (4) That at the trial in the county court the State offered evidence to show that the pheasants were taken in South Dakota. (5) That at the trial of the cause in which such pheasants were offered in evidence, the State of Nebraska proceeded on the theory that the pheasants were the property of the defendant in error, and was estopped to contend otherwise. (6) That after the pheasants were introduced in evidence by the State and after they had thereby come in custodia legis, the same were entrusted to the deputy county attorney of Madison County for safekeeping in a public frozen-food locker plant, and the said deputy county attorney was then an officer of the county court and had no authority to make any other or different disposition thereof. Defendant in error prayed that the plaintiff's petition in error be dismissed.

The plaintiff in error, in a reply, denied generally the allegations of the defendant in error's answer.

On December 4, 1953, the district court for Madison County entered findings and judgment as follows: (1) The order of the county court of June 28, 1952, was affirmed. (2) That the items described in the order were offered in evidence upon a trial in the above entitled cause and thereby went into the possession and custody of the county court, were thereby in custodia legis, and the county court had sole and exclusive jurisdiction to order disposition of the said property. (3) That prior to the introduction of the said property into

evidence, the same was in the custody of the enforcement officers and was being preserved in a refrigerated locker plant at Madison, and that during the course of the trial in the county court and at the termination thereof the county court directed the deputy county attorney to preserve the property so taken by the peace officers of the state for the court and entered judgment accordingly, and directed that the deputy county attorney deliver the property to the county court for disposition in accordance with the order of June 28, 1952.

The State filed a motion for new trial which was overruled, and the State appealed.

The State's assignments of error are as follows: The trial court erred in affirming the decision of the county court; and the trial court's decision is contrary to law.

The principal question for determination before this court is the propriety of the order of the county court in directing that the game birds, pheasants, be given to the custody of the defendant on the application filed by him.

The State contends that the county court is without authority in a criminal case to order contraband offered in evidence delivered to the defendant after the complaint against the defendant is dismissed. The State relies on certain sections of Chapter 37, R. R. S. 1943, entitled Game and Fish. We set forth in part such sections of the act deemed pertinent to the State's contention.

Pheasants are game birds within the concept of section 37-101, R. R. S. 1943.

Section 37-301, R. R. S. 1943, authorizes and empowers the Game, Forestation and Parks Commission to fix, prescribe, and publish regulations as to open seasons and closed seasons and bag limits for game birds as described in section 37-101, R. R. S. 1943.

Section 37-303, R. R. S. 1943, provides that it shall be unlawful for any person in any one day to kill, catch, take, or, save as therein excepted, to have in his pos-

session at any time a greater number of game birds, game animals, or game fish, of any one kind than as fixed by the commission.

Section 37-305, R. R. S. 1943, provides that no game protected by this act may be placed in cold storage except by the lawful owner of such game in his or her own name, and the same should be tagged as the commission by rule may require. Game legally taken and tagged in states other than Nebraska may be stored within the State of Nebraska as provided for in the game regulations of the commission. Every cold storage plant owner or operator in whose plant game protected by this act is held after the prescribed storage season, as established by the regulations of the Game, Forestation and Parks Commission, and following the close of the season thereon, and every person having in cold storage any game after such time shall be guilty of a misdemeanor.

The rules of the commission for the years of 1951-1952, established the open season for pheasants as October 26, 1951, to November 25, 1951, inclusive, and established the bag and possession limits as five cock pheasants. The same regulation provided as follows: "It is unlawful to place any game birds or game animals in any commercial refrigeration plant except by the lawful owner in his or her own name. All game placed in cold storage must be tagged and identified. It is unlawful to possess any game bird or game animal or the flesh of any game bird or game animal at any time except during the legal open season thereon and for 90 days thereafter * * *."

Section 37-606, R. R. S. 1943, provides that all game killed, taken or caught, and all game bought, sold or bartered, shipped or had in possession contrary to the provisions thereof shall be and the same are declared contraband, and subject to seizure and confiscation by any warden, sheriff or constable, or commissioner, or employee of the commission.

The State asserts that the record shows an express shipment of 15 pheasants was intercepted at Omaha. The defendant was charged with shipping and possessing them contrary to law; therefore, the following sections of the game law are also applicable: Sections 37-506, 37-519, 37-213, 37-303, and 37-308, R. R. S. 1943.

Section 37-506, R. R. S. 1943, relates to the duties of common carriers in transporting wild game birds enumerated in the act, and provides a penalty for violation of the same. This section also sets forth the obligation of the shipper when game birds are tagged as provided for by the regulations of the Game, Forestation and Parks Commission.

Section 37-308, R. R. S. 1943, provides that no person shall at any time, except during open season ordered by the commission, have in his or her possession any game birds as defined in the game law, and fixes the penalties for such offenses.

In addition, the State makes reference to section 37-607, R. R. S. 1943, which provides that possession within this state of the carcass of any bird which has shot marks upon it shall be evidence that the same was taken in this state, and the burden of proving otherwise shall be upon the party in whose possession it is found. In addition, said section provides that whenever the contents of any box, barrel, package, or receptacle consist partly of contraband and partly of legal game, the entire contents of such box, barrel, package, or other receptacle shall be subject to confiscation. As to the last-cited section, the question of whether or not the county court erred with reference to the burden of proof as therein contained is not for determination in this appeal as will appear by authorities subsequently cited.

Exhibits and an affidavit appear in the transcript which apparently were introduced in evidence and not preserved in the bill of exceptions in the criminal trial. The following authorities are applicable: As stated in Dolen v. Dolen, 155 Neb. 347, 51 N. W. 2d 734: "Ex-

hibits which are introduced in evidence in the case, or excluded therefrom, must be brought before the reviewing court in the record if the action of the lower court is to be reviewed." See, also, 3 Am. Jur., Appeal and Error, § 591, p. 223; Darlington v. State, 153 Neb. 274, 44 N. W. 2d 468; 4 C. J. S., Appeal and Error, § 738, p. 1216.

Affidavits used on the hearing cannot be considered in the appellate court unless preserved by a bill of exceptions. Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67.

In the instant case there was no bill of exceptions preserved on the trial of the criminal case in the county court. If there was any evidence taken on the application filed by the defendant in the county court for the return of the property it was not preserved in the bill of exceptions. A bill of exceptions may be preserved from the county court. See § 25-1140.08, R. R. S. 1943. There was no bill of exceptions of the evidence preserved on the proceedings in error in the district court.

The following authorities are also applicable. On appeal, error will not be presumed, but must affirmatively appear in the record. If there is no bill of exceptions, questions which require an examination of the evidence cannot be determined on appeal. See, Buck v. Zimmerman, 144 Neb. 719, 14 N. W. 2d 335; First Nat. Bank v. Stockham, 59 Neb. 304, 80 N. W. 899.

In the absence of a bill of exceptions it will be presumed that issues of fact presented by the pleadings were established by the evidence, that they were correctly decided, and in such situation the only issue on appeal is the sufficiency of the pleadings to support the judgment. See, Goger v. Voecks, 156 Neb. 696, 57 N. W. 2d 621; Jones v. City of Chadron, 156 Neb. 150, 55 N. W. 2d 495.

There is nothing in the game law of this state that prohibits the possession and transportation of game birds such as pheasants lawfully taken in another state. There

are certain statutory provisions and rules and regulations of the Game, Forestation and Parks Commission, as previously indicated, affecting the possession and transportation of the same after they are brought into this state. Cases that indicate the purpose of the game laws in protecting game, and limitations placed thereon, to the effect that the State can exercise no extra-territorial jurisdiction are exemplified in the following cases which are cited for the principle stated therein.

In the case of In re Davenport, 102 F. 540, the petitioner kept a restaurant in the city of Spokane, Washington. He was arrested and imprisoned for having in his possession and offering for sale quail which he purchased in the State of Missouri. The statute upon which the prosecution was founded declared it to be a misdemeanor to offer for sale quail or other game therein described. The petitioner was discharged in habeas corpus proceedings, the court saying: "I fully assent to the doctrine of these decisions, holding that it is competent for state legislatures to enact laws for the protection of game, and I do not question the decision of the supreme court of the United States in the case last cited (Geer v. Connecticut, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793), holding that the legislature of a state has the constitutional power to entirely prohibit the killing of game within the state for the purpose of conveying the same beyond the limits of the state; for it is true, and it is an elementary principle, that the wild game within a state belongs to the people in their collective sovereign capacity. Game is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic or commerce in it. But the power of a legislature in this regard only applies to game within the state which is the property of the people of the state, and no such power to interfere with the private affairs of individuals can affect the right of a citizen to sell or dispose of as he pleases game which

has become a subject of private ownership by a lawful purchase in another state."

In the case of Commonwealth v. Wilkinson, 139 Pa. St. 298, 21 A. 14, the defendant was charged with the possession for sale and exposing for sale of quail. The statute under which he was prosecuted provided: "No person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail or Virginia partridge, between the fifteenth day of December in any year and the first day of November next following, * * *." Then a penalty was fixed. By the thirty-third section of the act it was provided: "In all cases of arrests made for the violation of each or any of the foregoing sections of this act, the possession of the game, fishes, birds, * * *, shall be prima facie evidence of the violation of said act." The court said: "The manifest object of this act was the preservation of game within this commonwealth. We cannot assume that it was intended to preserve game elsewhere, * * *. The meaning of the act, as we view it, is that no quail shall be killed, in this state, between the dates specified, and no person shall have in his possession or offer for sale any quail so killed in this state." See, also, People v. O'Neil, 71 Mich. 325, 39 N. W. 1; State v. McGuire, 24 Or. 366, 33 P. 666, 21 L. R. A. 478; Commonwealth v. Hall, 128 Mass. 410, 35 Am. R. 387; People v. Bisbee, 181 App. Div. 40, 168 N. Y. S. 203, affirmed 224 N. Y. 579, 120 N. E. 871; Phoenix Hotel Co. v. Commonwealth, 153 Ky. 507, 156 S. W. 117; State v. Bucknam, 88 Me. 385, 34 A. 170, 51 Am. S. R. 406; Dickhaut v. State, 85 Md. 451, 37 A. 21, 60 Am. S. R. 332, 36 L. R. A. 765.

It is the State's contention that the pheasants in question were contraband, that is, prohibited by law from being imported into this state illegally or transported from the state illegally. In view of the record and the authorities heretofore cited, this contention cannot be sustained.

Coming to the principal question raised in this case,

that of the propriety of the order of the county court in directing the game birds, pheasants, to be given to the custody of the defendant on the application filed by him in the county court, we believe the following author-ities are applicable and pertinent to a determination of this question.

"A court which has in its possession, control, or equiva-lent dominion, property or funds involved in litigation may exercise exclusive jurisdiction over such property or funds to determine the rights therein, such as ques-tions respecting the title, possession, control, manage-ment, and disposition thereof; * * *." 21 C. J. S., Courts, § 495, p. 755.

In the case of State v. George, 116 W. Va. 465, 181 S. E. 713, it is said: "The Criminal Court * * * in the first instance, has sole control of its own process and of the conduct of its own officers thereunder." The court further said that the criminal court, the functions of which were invoked in the trial of the accused, must be able to control the actions of those acting as its officers and to judge whether they have the lawful right to take property from persons arrested. The criminal courts must have the power to decide whether those officers have acted wrongfully, and if so, to correct the mis-take. All the court need do is to restore the status quo by ordering the return of the property to the person from whom it was wrongfully taken. It may well be said that the trial court is vested with considerable dis-cretion in the matter of disposing of property claimed as evidence, and that this discretion extends even to the manner of proceeding in the event that the accused claims it was wrongfully taken from him. The weight of authority and the better-reasoned cases are to the effect that property introduced in evidence is in cus-todia legis, and that while it is in custodia legis it is not subject to garnishment, attachment, or other civil processes.

In Outerbridge Horsey Co. v. Martin, 142 Md. 52, 120

A. 235, it is said that when money is lawfully taken from a prisoner by the sheriff at the time of his arrest, it is in custodia legis, and subject to the order of the court having criminal jurisdiction of the offense, and neither by attachment proceeding nor by injunction should the criminal court's power of disposition of the money be taken away or interfered with. This rule applies to other personal property in addition to money. When a court acquires jurisdiction of goods, chattels, or money, in one case, the orderly process of the court requires that it shall be permitted to determine the rights of the parties in that case without the interference or interruption of a conflicting jurisdiction or of a separate and distinct action or proceeding. The doctrine of non-interference, to prevent conflict of authority of jurisdiction, which is established in cases of civil practice, is also applicable to criminal cases, and the procedure thereunder.

In Riggs v. State, 84 Neb. 335, 121 N. W. 588, in a prosecution for keeping intoxicating liquors for the purpose of sale in violation of law, liquors of the value of $2,000 were seized. They were in various types of containers. The jury found the defendant guilty as charged in one count of the information, and the court ordered certain liquor returned to the defendant. This court said: "If the verdict, however, either by specific description or words of exclusion, establishes that some of the liquors were not unlawfully held by defendant at the time the warrant was served, then as a matter of course defendant would be entitled to an order directing that such liquors be turned over to him." This is the order the district court made, and to that extent it is in point with the order of the county court made in the instant case.

The State contends that the effect of the county court's order of June 28, 1952, ordering the return of the property in question to the defendant would place the defendant in the position of a law violator by having il-

legal possession of the pheasants out of season or 90 days after the close of the season. In the light of the foregoing authorities, we are not in accord with the State's contention. The defendant was found not guilty of illegally possessing the pheasants on November 7, 1951, or illegally transporting them. From and after that period the pheasants were in custodia legis under the control of the court and the court made a judicial determination of the right of possession of the pheasants in the defendant. The State's contention is without merit.

We conclude that the trial court did not err in sustaining the order of the county court granting the right of possession of the pheasants and other food items in question to the defendant.

AFFIRMED.