# CHARLESTON.

FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* HENRY
SHAID *et als.*

(No. 5794)

Submitted March 15, 1927.    Decided April 12, 1927.

1. PARTIES—*Only Defendant Improperly Joined as Such May
   Demur on Such Ground; Party Defendant May Not Demur
   for Improper Joinder of State Road Commission as De-
   fendant on Ground of Action's Being in Effect One Against
   State.*

   Only the party defendant who is improperly joined as such
   may demur on that ground, as he alone is prejudiced by such
   misjoinder.    (p. 437).

   (Pleading, 31 Cyc. p. 274.)

2. STATES—*Action by Surety on Bond to Recover Assets of Con-
   tractor in Hands of State Road Commission, or Seeking
   Subrogation, is Not "Suit Against State" (Const. Art. 6,
   § 35).*

   A suit by a surety on the bond of a state road contractor,
   seeking application of assets of the contractor in the hands of
   the State Road Commission to the discharge of the liability of
   the bond; or seeking subrogation to the claim of the Com-
   mission against a subsequent contractor on the same road
   project who has appropriated to his own use said assets with-
   out proper authority, is not a suit against the State within the
   prohibition of Sec. 35, Art. 6, Constitution.    (p. 437).

   (States, 36 Cyc. p. 918.)

3. EQUITY—*Bill Seeking Consistent Forms of Relief or Alterna-
   tive Relief Springing From Practically Same Facts, and
   Presenting No Inconvenience or Injury to Any Party in
   Administering of Equities, is Not "Multifarious"; Bill by
   Surety on Bond of State Road Contractor to Recover As-
   sets in Hands of State Road Commission, and Seeking Sub-
   rogation to Commission's Claim Against Subsequent Con-
   tractor Who Had Appropriated Such Assets, Held Not
   "Multifarious."*

   A bill seeking consistent forms of relief, or alternative re-
   lief, all springing from practically the same state of facts, and
   presenting no inconvenience or injury to any party in the ad-
   ministration of the equities, is not multifarious.    (p. 439).

   (Equity, 21 C. J. § 433.)

4.   SAME—SUBROGATION—*Equity Will Always Entertain Bill for Subrogation and to Avoid Multiplicity of Suits.*

>   Courts of equity will always entertain a bill for the assertion of the equitable right of subrogation, and for avoiding a multiplicity of suits.   (p. 440).
>
>   (Equity, 21 C. J. § 48 ; Subrogation, 37 Cyc. p. 384.)
>   _____
>   (NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Randolph County.

Suit by the Fidelity & Deposit Company of Maryland against Henry Shaid and others.   From an order sustaining a demurrer of the named defendant and a dismissal of its bill, plaintiff appeals.

>   *Decree reversed; bill reinstated; remanded.*

*D. H. Hill Arnold,* for appellant.

*Leroy See* and *H. G. Kump,* for appellees.

LIVELY, JUDGE :

From an order sustaining a demurrer of Henry Shaid, and dismissal of its bill, plaintiff appeals.

The defendants are Henry Shaid, the State Road Commission, L. W. Cole and Jas. A. Lambert, partners as Cole & Lambert, Earle Furr, D. U. O'Brien, Jesse Hanie, P. J. Rigg, Ray Lambert, James Lambert, and the unknown creditors of Cole, or Cole & Lambert, who have furnished labor or material on the construction of a bridge on a public highway, contracted to be built by L. W. Cole with the State Road Commission.   Plaintiff avers that L. W. Cole contracted in writing with the State Road Commission on April 10, 1924, to build a bridge over Cedar Creek on a certain public road for the sum of $19,420.00, according to plans and specifications, and gave bond in the penalty of $9,760.00 as required by law, with plaintiff as surety thereon, conditioned for the faithful performance of the contract and specifications therein, and to save harmless the Commission from failure to complete the contract, or from damages growing out of carelessness of Cole; and conditioned further that Cole would pay for all

labor and material used in the construction for which he was liable. Plaintiff avers that prior to executing said bond as surety, Cole assigned, transferred and conveyed to it in writing all his right, title and interest in and to any and all materials, tools, plant and equipment then upon, or thereafter placed upon the project, to be in effect on the date the contractor should fail to complete the contract or whenever he should be in default under the contract; all for the better protection of the surety on the bond (plaintiff). The contract, bond for its performance, and assignment of tools, equipment, material, etc., are exhibited with the bill. The contract with the Commission provides, inter alia, that should the contractor discontinue the work, the engineer in charge shall give notice in writing to the contractor and his surety, and after ten days and continued default, the Commission shall take up the work, appropriate or use all materials and equipment on the ground, and proceed to have the work completed, and upon completion thereof, if the expense thereof be less than the contract price if it had been completed by the contractor, the remainder (difference between contract price and amount required to complete) shall be paid to the contractor; but if more, then the contractor and surety are bound to pay the excess.

The bill charges that the contractors began on the work, opened a quarry and assembled a large amount of stone on the ground cut and ready to be placed, worth approximately $2,000.00, and other stone worth $300.00 or more; and had made large excavations for beginning the substructure of the bridge, but had not been paid therefor by the Commission. On August 4th, 1924, notice was served on plaintiff that the work was not progressing according to the contract, and that if that condition continued a default of the contract would be declared; and on August 22nd a default was declared by the Commission, and an order entered, "that all materials and equipment on the ground suitable and acceptable to the Commission for said work, be and they are hereby appropriated by the Commission," and the bill says that said materials thus appropriated were assets of Cole, the contractor,

in the hands of the Commission, and should have been used by it for the benefit of the contract, and to lessen the liability of the plaintiff as surety. The Commission then called on plaintiff to complete the contract, a privilege which it waived; thereupon the Commission readvertised the project upon the same unit quantities and original specifications contained in the first advertisement for bids, and Henry Shaid, defendant, was awarded the contract for $21,795. The cost of building the bridge under the Shaid contract was $22,965.00, to which the Commission added its expense for readvertising, $43.72, making a total of $23,008.72, or a difference of $2,796.72 in excess of the Cole contract price of $20,212.00, for which excess the Commission has demanded payment of plaintiff and is threatening to sue for that amount. The bill further says that defendant Shaid, well knowing that the material on the ground had been taken over by the Commission, and well knowing that plaintiff as surety for Cole had the right to the benefit of the materials on the ground, and excavations and cribbage already made, appropriated all of it to his own use, and therefore is entitled to account therefor; that the Commission has paid Shaid in full in good faith, not knowing that he had used said material, and upon a fair settlement of the equitable rights of plaintiff by application of the materials, &c., as an offset against the $2,796.62 claimed as due from it, there will be nothing due from it by reason of its suretyship, and that Shaid should be compelled to account to the Road Commission and repay to it the worth of the materials, excavations, &c., appropriated by him without authority, for the relief of plaintiff against the demand of the Commission. The bill offers to confess judgment in favor of the Commission for the sum of $2,796.72, if the Court or Commission should require, subject to the Court's decision upon the equities set up by plaintiff in its bill.

In addition to its obligation to pay the Commission any excess over the contract price in finishing the work if default was made, the bond required that the contractor should also pay for labor and material, and the bill charges that about 18 suits had been instituted by laborers on the bond, for sums

aggregating $2,696.44, which suits and claims plaintiff has settled in full by paying the claimants the sum of $2,100; that said labor was upon the materials furnished and excavations made for Cole, wherefore plaintiff is subrogated to the rights of these laborers to their liens and claims thereon, and that Shaid should account to the Commission or to plaintiff for the fair value of the material and equipment thus appropriated. The bill further charges that Shaid when he began the work agreed with Cole that he would pay a stated price for the stone quarried, the total of which price ascertained by measurement of the stone should be applied by Shaid to payment of the laborers, but that Shaid failed to do so, and made no payment for the stone, except a royalty of 30c per cubic yard to O'Brien, the owner of the land on which the quarry was opened. The bill charges that the other defendants, Furr, O'Brien, Haine, Rigg, the two Lamberts, and other claimants unknown to plaintiff, are claiming from plaintiff as surety sums due them as laborers on the project, and asks that they be required to set up their claims in this suit. The bill calls upon Shaid for a full discovery of all the work and material on the bridge for which he received pay from the Commission, and a full discovery of the material on the ground used by him which was formerly the property of the original contractors.

The prayer of plaintiff's bill is that the threatened suit of the Commission for the excess claimed by it under the bond be stayed, until plaintiff's equities as stated be ascertained; that Shaid be required to account for the material so taken and used by him in the bridge; that the value thereof be treated as a fund applicable to the claim of the Road Commission against plaintiff; and that any surplus be applied to the laborers' claims paid by plaintiff; that any unpaid laborers' claims may be ascertained; that plaintiff may have decretal judgment against its principal for sums paid by it as surety; and for general relief.

Shaid's demurrer says: (1) that one of his codefendants, the State Road Commission, is a State agency, and the bill is in fact against the State, and therefore cannot be maintained;

(2) that the bill is multifarious; and (3) that plaintiff's relief is full and complete at law.

The Court dismissed the bill on the ground that the suit was, in fact, against the State, and that the Commission being a necessary party, the suit could not be maintained, because against the State.

Treating the averments of the bill as true, it appears that Shaid has taken and used material and work to which he was not entitled, and for which he owes either the Commission or plaintiff, and for which he should account, either to the Commission or to plaintiff, and if to the Commission, then plaintiff is entitled to the benefit thereof as surety on Cole's bond. The bill has a double aspect in that if it should be held that the value of the property appropriated was held not to be an equitable offset in favor of plaintiff against the sum due in favor of the Commission; then Shaid should account to plaintiff for the laborers' claims paid by it, as subrogated to their rights under the purchase contract between Shaid and Cole, or Cole & Lambert. Tersely stated, the bill says that Shaid has taken and used property the value of which should be applied to relief of plaintiff as surety on Cole's bond, and prays that it be so applied either through the Commission as a credit on its claim against plaintiff, or directly to plaintiff to reimburse it for the sums paid to the laborers.

The contract between Cole and the Commission on which plaintiff was surety provides for the forfeiture of the contract for failure to perform after notice, and for the appropriation by the Commission of all materials and equipment on the ground as may be suitable and acceptable. It seems to contemplate, (and it is so charged), that the material and equipment so appropriated must be used by the Commission on the project, and to that extent would lessen the liability of the obligors on the bond. The material has been so used, but not for the benefit of the obligors; and that fact forms the basis of this suit. We think it is a plain ministerial duty of the Commission to use or dispose of the material and equipment so appropriated for the benefit of the project, and

to the relief, pro tanto, of the principal and surety on the bond.

This brings us to consideration of the point raised that the suit cannot be maintained because it is one against the State. It will be observed that the Commission does not demur. So far it has tacitly consented to the prosecution of the suit. Shaid's point of demurrer on the ground that the Commission has been improperly joined should have been overruled. It is only the party who is improperly joined that can take advantage of such defect. *Lambert* v. *McDowell County Court et al.,* 136 S. E. 507. The learned chancellor recognized the rule of pleading that only the party improperly joined can complain of a misjoinder of parties, but held that the Commission was a necessary party, and without this necessary party there was not equity in the bill; and even though the Commission had not demurred, it could not consent to be sued, under the Constitution, Art. 6, Sec. 35, which declares that the State shall never be made defendant in any court of law or equity. Is this a suit against the State within the inhibition of Art. 6, Sec. 35, Constitution? Our decisions show a clear distinction between suits which can be maintained against a State agency or officer and those which are prohibited.

Suits involving the performance of a plain statutory duty by state officials or boards, and which do not involve the exercise of discretion or judgment on their part are generally held not to be within the prohibition of the Constitution. *State* v. *Shawkey,* 80 W. Va. 638; *Yost* v. *Road Commission,* 96 W. Va. 184; and *Draper* v. *Anderson,* 102 W. Va. 633, 135 S. E. 837. Where judgment and discretion are involved or the relief sought would be equivalent to a judgment against the state agency involving expenditure of state money, the suit cannot be maintained. *Miller Supply Co.* v. *Board of Control,* 72 W. Va. 524; *Gordon* v. *Board of Control,* 85 W. Va. 739; *Miller* v. *Board of Agriculture,* 46 W. Va. 192; *Mahone* v. *State Road Commission,* 99 W. Va. 397; *Barber* v. *Hospital,* 95 W. Va. 463.

According to the averments of the bill, the plain duty on the part of the Commission is to apply the value of the material and equipment taken over by it by reason of the contract with Cole to the relief of the surety; wherefore if Shaid has taken the material for his own use, plaintiff should be subrogated to the Commission's right against him. The real defendant is Shaid, for he will be the only person who will be required to pay, if the averments of fact be true. No money judgment is sought against the Commission. Its relation to the property involved is in the nature of that of a trustee, holding the property or its value for the benefit of the surety. It has made legal demand on plaintiff for the excess over Cole's contract occasioned by the reletting to Shaid; and should it sue at law plaintiff herein could maintain its suit in equity for the purpose of asserting its equitable offset thereto. It could not do so at law. *First Nat. Bank* v. *Parsons,* 42 W. Va. 137, 24 S. E. 554. The suit is really for the benefit of the Commission. If the Commission has appropriated the material as alleged, its duty would be to apply it to the benefit of the obligors on the bond; and if Shaid has appropriated the material and equipment as alleged, he should account therefor either to the Commission for the benefit of the surety, or to the surety itself. The bill says that Shaid had notice of plaintiff's right to the property at the time he contracted with Cole & Lambert that he would pay the agreed price for the benefit of the laborers. The Commission and surety have a joint interest in requiring Shaid to account for the property appropriated by him. Its value should be applied on the Cole contract; and if the suit were at law, the parties having a joint common interest should be joined as plaintiffs or defendants, as the case may be. But in equity it is generally sufficient if all the parties interested in the suit are before the court either as plaintiffs or defendants; and a court of equity may always transpose the parties or make an alignment of them where necessary or proper. *Sadler* v. *Taylor,* 49 W. Va. 104. ''Generally it is not error in equity to transpose parties who might be made defendants so as to make them plaintiffs or *vice versa,* for the reason that in

equity all of the parties to the suit are considered as actors, and it is no matter on which side of the case they stand." *McConaughey & Co.* v. *Bennett's Ex'rs.*, 50 W. Va. 172, 178. If the Commission has by its order appropriating the material on the ground useful to the project, acquired the property, and Shaid has taken it without authority, the surety is entitled to be subrogated to the right of the Commission against Shaid, and the interest of the Commission and surety in the suit are practically the same. No bad faith is charged against the Commission in paying to Shaid the full price called for under his contract. It is charged that such payment was made without knowledge on the part of the Commission that he had appropriated and used the material and equipment. We are constrained to hold that this suit is not of the class prohibited by the Constitution in Art. 6, Sec. 35.

Is the bill multifarious? Where this objection is interposed the courts first look to see if the mode of reaching the end desired is convenient for all concerned, and that justice may be administered to all persons in interest; and then if by pursuing that method any person can be unduly hampered or injured. *Boom and Lumber Co.* v. *Reger,* 90 W. Va. 252; *Sult* v. *Hochstetler Oil Co.,* 63 W. Va. 317, 61 S. E. 307; *Ice and Storage Co.* v. *Conner,* 61 W. Va. 111, 55 S. E. 982. As before observed, the primary object of the bill is to have the materials and equipment (or the value thereof) placed on the ground by Cole, applied to the relief of his surety on the bond; and that Shaid be required to account therefor either to the Commission for the benefit of the surety or direct to the surety as subrogated to the claims of the laborers, and to ascertain the amounts of the unpaid labor claims. The relief sought springs out of one subject-matter—the construction of the bridge, in which all the parties are interested. We cannot see wherein Shaid would be hampered or prejudiced by staying the threatened suit at law by the Commission against the surety until the equities shall have been determined; or that a decretal judgment be rendered against Cole, or Cole & Lambert, for any sum remaining due the surety after crediting the value of the materials &c. on the sum for which Cole,

or Cole & Lambert, were primarily responsible under the bond. A bill framed for alternative relief against the same defendants, when the forms of relief are not inconsistent and spring from practically the same state of facts, is not multifarious. *Lockhart* v. *Hoke,* 85 W. Va. 382, 101 S. E. 730. The bill is not multifarious. As before observed, the lower court based its ruling solely on the point that the suit was one against the state within the inhibition of the Constitution, and did not pass upon the objection of multifariousness, or upon the claim that plaintiff had a complete and adequate remedy at law.

The remaining point is that plaintiff has an adequate and complete remedy at law. Shaid is the real defendant. The whole case revolves around his appropriation of the materials and excavations alleged to have been appropriated by him under agreement with Cole, or Cole & Lambert, and without the knowledge or consent of the Commission or plaintiff, both of whom, the bill states, had better right thereto. That agreement was (as alleged) that Shaid should pay a stipulated price for the material taken for the benefit of the labors. Plaintiff has paid off and discharged the labor claims to the amount of $2,100.00. There is no privity of contract between plaintiff and Shaid. Plaintiff is seeking to be subrogated to the right of the State against Shaid, as well as to the right of these laborers whose claims it has paid, and also to have settled the outstanding labor claims for which it is liable as surety. Already about seventeen suits at law by laborers have been settled by the surety by compromise. If the Commission sues at law as threatened and requires plaintiff to pay the $2,796.62 claimed by it, the surety cannot plead its equitable offset under Sec. 5, Chap. 126, Code, as hereinbefore set out. If it paid the sum thus claimed, another suit by it would be necessary to recover from Shaid; and if the unpaid laborers sue on Cole's bond and recover, as the others have done, plaintiffs would be put to suit against Shaid for the amounts thus paid. Equity will take jurisdiction to avoid a multiplicity of suits. The remedy in equity is more adequate. Substitution is a familiar ground of equitable jurisdiction;

and in the absence of statute can only be enforced in a court of equity. *Haffey's Heirs* v. *Birchetts &c.*, 11 Leigh (Va.) 83. "The process of subrogation is analogous to the creation of a constructive trust, the creditor being compelled to hold his rights against the principal debtor, and his securities, in trust for the subrogee. * * * Subrogation is purely an equitable right, and being an equity, it is subject to the rules governing equities. Pom. Eq. Jur. (2nd Ed.), Sec. 2349.

Plaintiff's remedy is in equity, although it has not fully paid all its obligations under the Cole bond. *Neal* v. *Buffington*, 42 W. Va. 327; *Carr* v. *Davis*, 64 W. Va. 522, 528; *Dobie* v. *Fidelity & Casualty Co.*, 95 Wis. 540; Pom. Eq. Jur. Sec. 1417.

The order sustaining the demurrer will be overruled; the bill reinstated, and the cause remanded.

*Decree reversed; bill reinstated; remanded.*