STATE OF WEST VIRGINIA *v.* DREXEL R. GEORGE

(No. 8186)

Submitted September 10, 1935. Decided October 1, 1935.

*Homer A. Holt,* Attorney General, *J. F. Bouchelle,* Assistant Attorney General, and *Walter R. Haggerty,* Prosecuting Attorney and *Harrison Conaway,* Assistant Prosecuting Attorney, for plaintiffs in error.

*L. T. Eddy, M. E. Morgan* and *H. R. Cronin,* for defendant in error George.

KENNA, JUDGE:

On December 22, 1934, Drexel R. George filed a petition in the Criminal Court of Marion County alleging that on the first day of November, 1934, he was arrested in the city of St. Louis, Missouri, and returned to West Virginia to answer certain indictments pending in the Criminal Court of Marion County charging him with embezzlement; that he was returned to Marion County and committed to jail to await trial; that at the time of his arrest, the sum of $1,044.00 in currency

was removed from his person by the arresting officers and that it is now in the possession of P. D. Shingleton, Superintendent of the Department of Public Safety; that the petitioner has made demand for its return which was refused, as petitioner is advised, pursuant to the advice of the attorney general of West Virginia and the prosecuting attorney of Marion County. The petition further alleges that the money so taken from the petitioner was his personal funds and has no connection whatever with any of the indictments pending against the petitioner, but that it was obtained by petitioner by means of loans upon certain policies of insurance and upon his automobile. The petition alleges in detail the amounts of the policies, the companies from which the money was borrowed and the exact amount borrowed from each, as well as the approximate dates upon which it was borrowed by the petitioner. The allegations concerning the money borrowed by petitioner on his automobile are no less specific. The petition goes on to allege that the money was borrowed by the petitioner preparatory to his return to West Virginia to face the charges there pending against him, and for the purpose of assisting in the financing of his defense to those charges. It further alleges that the money taken from petitioner was not the fruit of the crimes charged against the petitioner, or any of them, and that it has no evidential value and would not be a part of any evidence to be used at the trial of any of the charges pending against him. It is further alleged that, by assignment in writing entered into by petitioner on the 3rd day of December, 1934, the money taken from the petitioner was assigned to Harry R. Cronin to apply upon attorney fees in connection with petitioner's defense of the charges pending against him. The prayer of the petition is that P. D. Shingleton, Superintendent of the Department of Public Safety, and Walter R. Haggerty, prosecuting attorney of Marion County, be required to show cause why the money in question should not be delivered to petitioner or to his assignee.

Walter R. Haggerty and P. D. Shingleton filed separate demurrers and separate answers to the petition. The points of demurrer relied upon are to all intents and purposes the

same in each instance, and will be dealt with hereinafter to the extent necessary to decide the points of error raised. The answers also are to all intents and purposes the same. They set forth upon information and belief that the money in question is the fruit of the embezzlement with which petitioner stands charged, and further, that there are a large number of claimants of the funds, including the county court of Marion County against which the embezzlements charged against George were committed, and Blanch S. George, who had caused to be served upon P. D. Shingleton a notice of execution lien in the amount of $13,040.50. The answer of Shingleton states that the money is in his possession as charged.

Demurrers were filed to the answers and, without taking proof, the trial court held upon the hearing that the demurrers to the petition were to be overruled, the demurrers to the answers were to be sustained, and ''as to the matters of law and fact arising upon the said petition and answers thereto is of opinion to and doth hereby grant the prayer of the said petition.'' The order directs the return of the money to the petitioner. Application was made to the circuit court of Marion County for a writ of error to that judgment, and this writ is prosecuted to the judgment of that court declining to award the writ.

The nine assignments of error are argued in the brief of respondents under the following headings:

First, that the proceeding upon the petition is civil in its nature and that, therefore, the Criminal Court of Marion County had no jurisdiction; second, that such matters could not be disposed of prior to the trial upon the indictments, and that consequently the trial court's order was premature; third, that the trial court had no jurisdiction over the Superintendent of the Department of Public Safety; fourth, that the petition shows the money not to have belonged to petitioner and hence that it is demurrable; that the answer shows that the money was subject to numerous claims superior to the petitioner's title, or that of his assignee, the priorities of which could not be determined in a criminal proceeding; that the trial court should have directed, or permitted, an inter-

pleader to be filed by the respondents if they so desired; fifth, that an *ex parte* petition can not institute a proper proceeding for the adjudication of conflicting claims to money; and that it was the duty and right of the arresting officers to remove the money from George's person; sixth, that the state has a prior lien upon the money for its costs, incurred in and about the prosecution of the charges against George.

Dealing first with the third of these points to the effect that the Criminal Court of Marion County had no jurisdiction over the Superintendent of the Department of Public Safety with reference to the matters involved in the petition herein filed, we find that it is rested upon the provision of the West Virginia Constitution to the effect that: "The state of West Virginia shall never be made defendant in any court of law or equity." It is to be remembered that this proceeding on petition is a part of, and is ancillary to, the proceedings upon the indictments pending against George in the Criminal Court of Marion County. It is neither an action at law nor a suit in equity within the meaning of the constitutional provision quoted. Neither is the State of West Virginia in any sense made a defendant in the proceeding by the filing of this petition. The state is already a party to the main proceeding. In this proceeding, the arresting officers and the members of the Department of Public Safety, as well as its Superintendent, were acting under, or pursuant to, the process of the Criminal Court of Marion County. That process was their sole legal reason for having the prisoner in their custody and for exercising power over his person. The Criminal Court of Marion County, in the first instance, has sole control of its own process and of the conduct of its own officers thereunder. Officers acting under, or pursuant to, the process of that court are accountable to that court for their conduct. The Superintendent and members of the Department of Public Safety are such officers in the circumstances in which they are here found. Any different rule, it seems to us, would make the Superintendent and members of the Department of Public Safety, when acting in the ordinary routine capacity of peace officers, and when assisting in making arrests under process of the courts of the state, potentially, at least, a

hindrance rather than a help. Neither do we think that this proceeding on petition in the Criminal Court of Marion County is a suit within section 4, article 2, chapter 14, of the Code of West Virginia, invoked in respondents' brief, which provides that suits against certain officers of the State shall be brought at the seat of government. We are of the opinion that neither of the reasons assigned sustain this point of error.

Dealing with the fourth point set forth in the brief, it is necessary to say, with reference to the petition's showing that Drexel George, the petitioner, had assigned the fund in question and hence that the petition shows petitioner not to be the actual owner of the fund, only that the West Virginia case of *Bentley* v. *Standard Fire Insurance Co.*, 40 W. Va. 729, 23 S. E. 584, definitely decides that point against the respondents' contention.

The remaining points in the assignments of error, we think, need not be dealt with separately since they all arise from the same main contention that the Criminal Court of Marion County had no jurisdiction to entertain a petition such as was filed in this case. It is argued that if the Criminal Court of Marion County attempted to exercise such jurisdiction, it must do so by adjudicating different claims asserted to the fund in question here, and that, being a criminal court, it is obvious that could not be done within its powers. We can not concur with this view. It is, we believe, universally recognized that arresting officers may take from persons arrested, any articles, including currency and money, which, gauged by the nature of the crime with which they are charged when arrested, can be said to be the fruit of the crime, or of other evidential value in the trial of the offense charged. The same rule applies to property which might be of material assistance in effecting an escape. The necessary consequence of this rule is that the criminal court, the functions of which are invoked in the trial of the accused, must be able to control the actions of those acting as its officers and to judge whether they have had the lawful right to take property from persons arrested. Any other rule would lead to the practical impotence of criminal courts, because if the officers of such courts are not held

subject to their orders in this respect, it is difficult to see how they could be so subject in any other important respect. The criminal court must, therefore, have the power to decide whether its officers, and .those lawfully assisting them, have acted rightly or wrongly, and, if wrongly, to correct the mistake. Neither is it necessary, in order to permit such a course, that the criminal court should go further and undertake to exercise the civil function of determining claims and priorities. All that it need do in instances where its officers have acted wrongfully is to restore the *status quo* by ordering the return of property to the person from whom it was wrongfully taken. The proceeding by petition, while summary and informal, is not *ex parte*, strictly speaking, but is one in which the arresting officers or, as here, the officer having possession of the thing taken, must have an opportunity to appear and be heard. It may well be said that the trial court is vested with considerable discretion in the matter of disposing of property claimed as evidence, and that this discretion extends even to the manner of proceeding in the event that the accused claims it was wrongfully taken from him. Otherwise, by the mere claim that property had been wrongfully taken from the accused by the arresting officers, the accused might be put in the position of being able to force the state virtually to try the accusation upon a preliminary issue. But where, as here, the petition alleges substantial facts and circumstances tending strongly to show that the property taken from the accused was neither the fruit of the crime nor such as would assist in an escape, nor of any evidential value whatsoever in proving the accusation, and where the answer of the officer in possession of the property neither directly denies these allegations nor expressly avers any matter of fact to sustain the alleged conclusion that the money in question is of evidential value in the trial of the accused, and where the question of the money's return is presented as a matter of law upon a virtually uncontroverted foundation of fact, there can be no doubt as to the duty of the trial court.

We believe that the foregoing discussion and all of the matters advanced therein are sustained by such ample authority as to dispense with its citation. There is, however, a

matter involved upon which one of the points of error is predicated in which the courts are by no means in accord. That is the extent to which, if at all, and the means by which, property taken from accused persons may be subjected to civil process by way of attachment, garnishment, execution and the like, while in the hands of the officer making the arrest or his representative. A considerable number of cases have held that property in the hands of an arresting officer taken from the person of the accused is subject to garnishment, attachment and other civil process. e.g., *Fitzgerald* v. *Nickerson*, 43 R. I. 396, 113 Atl. 290, 16 A. L. R. 373, and note. These cases proceed upon the theory that the rule they enunciate does not interfere with the possession of the property by the officer, nor with its use in the criminal court, and that it furthers substantial justice in permitting claimants to perfect their legal rights, where a different rule might operate to the benefit of a person accused of crime and would defeat claims that possibly would grow out of the very crime of which the accused stands charged. The weight of authority and, in our opinion, the better reasoned cases, on the other hand, are to the effect that such property is *in custodia legis,* and that while it is *in custodia legis* it is not subject to garnishment, attachment and other civil process. *Hubbard* v. *Garner*, 115 Mich. 406, 73 N. W. 390, 69 Am. St. Rep. 580; *Holker* v. *Hennessey*, 141 Mo. 527, 42 S. W. 1090, 39 L. R. A. 165, 64 Am. St. Rep. 524; *Harawitz* v. *Murray*, 123 Misc. Rep. 301, 205 N. Y. S. 230; *Richardson* v. *Anderson*, (Tex. App.) 18 S. W. 195; *Connolly* v. *Thurber-Whyland Co.*, 92 Ga. 651, 18 S. E. 1004; *Robinson* v. *Azel, Howard & Trustee*, 7 Cush. (61 Mass.) 257; *Morris* v. *Penniman*, (Mass.) 14 Gray 220, 74 Am. Dec. 675; *Commercial Exchange Bank* v. *McLeod*, 65 Iowa 665, 19 N. W. 329, 22 N. W. 919, 54 Am. Rep. 36; *Outerbridge Horsey Co.* v. *Martin*, 142 Md. 52, 120 Atl. 235; *Kuehn* v. *Faulkner*, 136 Wash. 676, 241 Pac. 290, 45 A. L. R. 571. These cases proceed upon the theory that to make property which has been taken by officers from a person accused of crime subject to civil process and to seizure thereunder, or to the perfection of civil claims, would mean that the process of the criminal court would frequently be

prostituted, and made a mere auxiliary to the prosecution of civil claims, and that permitting property in the custody of the officers of a criminal court, and under its process, to be made subject also to civil process by way of garnishment, attachment and the like, would substantially interfere with the control of the criminal courts over their officers and would lead to an inextricable confusion.

An examination of the cases which hold that property in the hands of an arresting officer taken from the person of an accused is subject to civil process will show that they recognize as an exception to the operation of the rule they lay down that where the criminal process has not been procured in good faith, the property in the hands of the arresting officers is not subject to civil process. This exception, in recognizing the vice that would inevitably creep out of the rule and the shadow that its application would undoubtedly cast upon the integrity of criminal process, illustrates well the fundamental unsoundness of the rule itself. Anything that tends in the slightest degree to cast doubt upon the purpose of criminal process undermines the essential respect of the people for their courts and for that reason is against public policy.

In the light of the foregoing, our conclusion is that the order of the trial court overruling the demurrer to the petition, sustaining the demurrers to the answers of the respondents, and directing the return of the money in question to the accused must be affirmed.

*Affirmed.*