ROBERT J. WHITNEY AND ELIZABETH WHITNEY

*v.*

RALPH MYERS CONTRACTING CORPORATION

(No. 12053)

Submitted January 24, 1961. Decided February 28, 1961.

*Campbell, McNeer, Woods & Bagley, S. S. McNeer, L. E. Woods, Jr., C. F. Bagley, Jr.,* for plaintiff in error.

*Beckett & Burford, William A. Beckett, Robert H. Burford,* for defendants in error.

GIVEN, JUDGE:

Plaintiffs, Robert J. Whitney and Elizabeth Whitney, instituted an action of trespass on the case in

the Circuit Court of Cabell County for recovery of damages to a dwelling owned by them, alleged to have resulted from blasting operations of the defendant, Ralph Myers Contracting Corporation. A jury trial resulted in a verdict for plaintiffs for $1,288.95, and judgment was entered on the verdict.

Defendant, in the performance of a contract with the State Road Commission for the grading of a project in connection with the construction of Interstate Highway No. 64, near Huntington, was required to make a deep cut through an elevation and, in doing so, was required or elected to perform blasting operations through rock. The damages complained of are alleged to have been caused by vibrations resulting from such blasting.

Plaintiffs were the owners of real property on which a dwelling had been erected, situated on the right of way acquired by the State for the highway. They were permitted, however, and elected to move the dwelling to a new location, a distance of approximately eighteen hundred feet from the nearest point of the blasting operations. The property at the new location was not a part of the property acquired for the right of way for the highway. Plaintiffs employed a contractor by the name of Wolfe to make the excavation for the basement for the house at the new location, to construct the basement walls, and to move the house to and place it on the walls, which he did. The basement walls were constructed of masonry blocks, usually referred to as cinder blocks, and were eight inches wide, eight inches high and sixteen inches long. The height of the walls was approximately eighty eight inches. From one side of the house the basement walls were extended approximately twelve feet farther than the reach of the house, for the purpose of supporting a contemplated addition to the house. Through the center of the basement, after the house had been brought to rest on the walls, plaintiffs placed further, perhaps temporary, supports, referred to in the testimony as "jacks". The basement floor had not been finished at the time of the damages complained of, and "backfilling" had not

been completed. The contractor Wolfe, experienced in that type of work, and others, testified to the effect that the foundation and the walls, and the materials used, were ample for the type of dwelling placed thereon, and that the construction of the walls was done in the usual manner, by good workmanship.

On the trial before the jury the defendant contended that the basement walls were not properly constructed, that they were not of sufficient strength for the purpose intended, and that certain work performed by plaintiffs in connection with the support of the house was improperly done. We think, however, it is unnecessary to detail the evidence as to such contentions, for the jury finding precludes this Court from disturbing the verdict on such grounds.

The house was moved to the new location about January 15, 1959 and, after plaintiffs had reoccupied the house, cracks began to appear in the basement walls and continued to increase in number and size until about April 10, 1959, when the basement walls, or, at least, the larger part thereof, collapsed, permitting the house to fall. Several witnesses testified to the nature and severity of the vibrations resulting from the blasting operations of defendant, which reached plaintiffs' property and its vicinity, and of complaints made to defendant relating thereto. No witness saw any crack or break in the basement walls appear simultaneous with experiencing any vibration.

Defendant offered testimony tending to establish that the blasting was not the proximate cause of the damages complained of, that the blasting was done according to good engineering and construction practices, and that the blasting was required to be done by the defendant by virtue of a contract "with the state and federal authorities".

The first proposition relied on by defendant for reversal of the judgment complained of is to the effect that plaintiffs failed to show any causal connection between the blasting done by defendant and the dam-

ages complained of. We think the question was one for jury determination. A plaintiff, of course, must establish by satisfactory proof that the injury of which he complains was caused by, or was the result of, action on the part of the defendant, before recovery is permitted. " 'Proximate cause' is most often defined as any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred; but it has been recognized that the various definitions and tests of proximate cause are inadequate to afford a definite and invariable rule whereby a line can be drawn between those causes which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action." 65 C.J.S., Negligence, Section 103. See 13 M.J., Negligence, Section 23.

In the instant case, the facts detailed are sufficient to permit a jury to infer that the damages were the direct result of the blasting done by the defendant, by the vibrations through the earth occasioned by such blasting. Plaintiffs were not required to show that the damages to the basement walls were the result of any particular or isolated explosion, but only to establish facts that would fairly raise an inference as to the cause thereof. That repeated vibrations of the earth, at or in the vicinity of plaintiffs' property, occasioned by the blasting operations, occurred during times material, appears to be clearly established by the proof and, we believe, the evidence sufficently establishes that the damage to the basement walls did not occur because of normal pressures or circumstances. In *Scranton v. L. G. De Felice & Son, Inc.,* 137 Conn. 580, 79 A. 2d 600, a case decided on facts very similar to the instant case, involving the question here being considered, the Court said: "* * * The finding that the blast in question was followed immediately by a marked and noticeable shaking of the plaintiff's buildings and that cracks then appeared in the exterior and interior plaster is ample under the

circumstances to justify the conclusion that the cracks resulted from the blast."

The next proposition relied on by defendant for reversal of the judgment complained of relates to the action of the trial court in holding that in the circumstances of the instant case, the plaintiffs were not required to establish negligence on the part of defendant in connection with the blasting operations, the proposition usually being referred to as the absolute liability of the defendant.

The question has not been definitely answered by this Court, though we believe the answer has been clearly indicated. As recently as *Pope v. Edward M. Rude Carrier Corp.*, 138 W. Va. 218, 238, 75 S. E. 2d 584, this Court said: "* * * Though there is some conflict in the decisions in different jurisdictions, numerous cases hold that a person who conducts such operations, though not guilty of negligence, is liable for consequential injuries to property or persons which result from concussion or vibration caused by an explosion * * *".

In *Fairfax Inn v. Sunnyhill Mining Co.*, 97 Fed. Supp. 991, a case decided by the United States District Court for the Northern District of West Virginia, the Court considered the question here involved and reached the conclusion that "* * * Blasting is necessarily and inherently dangerous and, hence, one who undertakes to blast so near to another's property as to be liable to cause damage must assume the risk for any damage resulting from vibration or concussions, irrespective of negligence."

In *Britton v. Harrison Construction Co.*, 87 Fed. Supp. 405, 408, a case decided by the United States District Court for the Southern District of West Virginia, the very same question was considered, the court pointing out that the question had not been settled by the Supreme Court of Appeals of West Virginia, and that the federal rule appears to be one of absolute liability, concluded: "* * * The use of dynamite in

blasting is a well-recognized practice, but the injurious results often occasioned thereby are equally well known. Any person who uses it in such manner as to cause damage to his neighbor must be held absolutely liable therefor." See *Exner v. Sherman Power Construction Co.* (2d Cir.), 54 F. 2d 510, 80 A.L.R. 686; *Weaver Mercantile Co. v. Thurmond,* 68 W. Va. 530, 70 S. E. 126, 33 L.R.A., N. S., 1061; *Wigal, Administratrix v. The City of Parkersburg,* 74 W. Va. 25, 81 S. E. 554, 52 L.R.A., N. S., 465; *Dallas v. Whitney,* 118 W. Va. 106, 188 S. E. 766. In the *Exner* case, *supra,* the Court, by Judge Augustus N. Hand, stated: ''We can see no reason for imposing a different liability for the results of an explosion, whether the dynamite explodes when stored or when employed in blasting. To be sure there is a greater likelihood of damage from blasting than from storage, but in each case the explosion arises from an act connected with a business conducted for profit and fraught with substantial risk and possibility of the gravest consequences * * *''. See *Wilson v. Phoenix Powder Manufacturing Co.,* 40 W. Va. 413, 21 S. E. 1035, 52 Am. St. Rep. 890.

A well considered opinion, noting the wide split of authorities as to the question involved, citing numerous cases pro and con, is found in the case of *Whitman Hotel Corporation v. Elliott & Watrous Engineering Co.,* 137 Conn. 562, 79 A. 2d 591. In that case, the Court pointed out that ''* * * It is said in Harper, Law of Torts, page 408, in support of the author's statement that the basis of the cause of action is not negligence: 'Blasting is frequently not only desirable but absolutely essential under circumstances that entail serious potentialities of harm. Under such circumstances it is not negligence. Nevertheless, there is liability to make good such losses as come within the scope of the rule, that is such harms, the danger of which is the reason for predicating liability upon this type of conduct * * * In all of these situations danger may be foreseen by reasonable men, as possible if not probable, but the risks to others are not by the ordinary prudent man,

regarded as unreasonable. It is precisely these conditions which give rise to the doctrine of strict liability. Defendant is not regarded as engaging in blameworthy conduct. He is creating hazards to others, to be sure, but they are ordinary, and reasonable risks incident to desirable social and economic activity. But common notions of fairness require that the defendant make good any harm that results even though his conduct is free from fault.' The cause of action for damages resulting from the intrinsically dangerous operation of blasting does not necessarily sound in negligence''. The Court concluded: ''Connecticut is committed to the rule that, when one engages in the inherently dangerous operation of blasting with dynamite under such circumstances that the person or property of another is necessarily or obviously exposed to the danger of probable injury, he does so at his peril. He is absolutely liable for damages which result from that blasting whether he was negligent in his conduct of the operation or not. *Worth v. Dunn,* 98 Conn. 51, 59, 118 A. 467; *Welz v. Manzillo,* 113 Conn. 674, 682, 155 A. 841. To exempt such a one from liability for damage caused by vibrations or concussion resulting from his blasting would be to put a limitation upon the scope of the rule which would not be justified by any considerations of logic or practicality.'' See *States Exploration Co. v. Reynolds* (Okla.), 344 P. 2d 275; *Beckstrom v. Hawaiian Dredging Company, Ltd.,* 42 Hawaii 353; *Watson v. Mississippi River Power Co.,* 174 Iowa 23, 156 N. W. 188, L.R.A. 1916D 101; *Wallace v. A. H. Guion Co., Inc.,* S. C., 117 S. E. 2d 359.

Little, if any, difference in the authorities exists in cases of damages resulting from blasting operations where rock or other debris is cast on the premises of a third party, it being almost universally held that liability exists, without negligence. We can see no practical or warranted distinction between such cases and cases where damages result from vibrations caused by blasting operations. One is as much a trespass as the other. The damages caused a plaintiff are as real

in one case as in the other. See Trespass to Negligence to Absolute Liability, 37 Virginia Law Review 359. The matter is stated with terseness by the Honorable Robert T. Donley, a former member of this Court, in ''Some Aspects of Tort Liability in the Mining of Coal'', 61 West Virginia Law Review 243, in this language: ''There appears to be no authority directly in point in West Virginia. The blasting cases are not, as sometimes supposed, based upon the application of the doctrine of *Rylands v. Flecher,* for the reason that the blasting is done intentionally; whereas, under the *Rylands v. Fletcher* doctrine the instrumentality causing the damages accidentally escapes. Nor is this a case of 'nuisance', as in cases involving the detonation of *stored* explosives, in which the courts impose an absolute liability, nor is the matter governed by the rule of *res ipsa loquitur,* which is a mere rule of evidence and not a rule of substantive law.

''It is submitted that the doctrine of absolute liability should be applied, for it is little comfort to a plaintiff whose property has been brought down about his ears to deny him recovery by answering that while the defendant admits having destroyed the plaintiff's property, he was very careful when he did it * * * The basis of liability is the extraordinary, hazardous nature of the defendant's conduct and a sound public policy demands that the actor assume the risk.''

In *Opal, Rahm, Syverson and Lanjarotta v. Material Service Corporation,* 9 Ill. App. 2d 433, 133 N. E. 2d 733, citing numerous cases, it was held: ''13. Operator of stone quarry is liable to adjoining land owners for damage resulting from blasting whether the damage occurs through trespass or concussion.''

In Prosser on Torts, Second Edition, Section 59, at page 336, it is stated: ''* * * The courts are unanimous in holding that blasting, which is certainly the typical activity of this kind, results in strict liability without proof of negligence when rocks are thrown upon the plaintiff's land, so that a 'trespass' may be found, or

where they strike his person. Where the damage is the result merely of concussion or vibration, some seven or eight courts continue to adhere to the ancient distinction between trespass and case, and regard the injury as an 'indirect' one, for which there can be no recovery except on the basis of negligence. This distinction, which has often been denounced as a marriage of procedural technicality with scientific ignorance, is rejected by the great majority of the courts, which hold the defendant strictly liable for concussion damage * * *''.

In The Law of Torts, by Harper and James, Vol. 2, Section 14.4 at page 801, the authors state: ''Efforts have been made to assimilate the principle of *Rylands v. Fletcher* to the 'unreasonable risk' analysis of negligence. As long ago as 1929, Stallybrass in a memorable article asserted: 'The principle of law behind all these cases is, it is submitted, that if a man takes a risk, which he ought not to take without also taking upon his shoulders the consequence of that risk, he shall pay for any damage that ensues.' This appears to be altogether sound. It means that the enterprise, involving as it does unusual hazards, considering the time and locality, must pay its way * * *''. See Restatement of the Law of Torts, Chapter 21, Section 519.

We reach the conclusion supported, we believe, by the better reasoning, and much the greater weight of authority, that the plaintiffs were entitled to recover from the defendant the amount of damages resulting to their property from the blasting operations of the defendant, without establishing any negligence on the part of the defendant in connection with such operations. It must be remembered that a person responsible for blasting operations has complete control over the same. The person injured usually has no control, or even knowledge, as to such operations, the time of the explosions, the number, depth or size of the blasting holes, the spacing thereof, the type, kind or amount of the exposive to be used being wholly within the control and discretion of the person in charge of the blast-

ing operations. He has the power to turn loose a "destructive force and energy to the air * * * by the use of the almost limitless powers of modern explosives * * * [which] creates a little earthquake." *Watson v. Mississippi River Power Co.*, 174 Iowa 23, 156 N. W. 188, L.R.A. 1916D 101. See Liability for Substantial Physical Damage to Land by Blasting, 33 Harvard Law Review 542. Such being true, recovery in such cases should not be made to depend on proof of negligence. See Annotation, 20 A.L.R. 2d 1372; Annotation, 92 A.L.R. 741; Annotation, 97 A.L.R. 205; 35 C.J.S., Explosions, Section 8; 22 Am. Jur., Explosions and Explosives, Section 54.

The last proposition relied on by defendant for reversal of the judgment complained of relates to the contention that the blasting operations having been performed by virtue of a contract with the State, defendant is entitled to immunity from liability, if not negligent in the performance of the contract, or, in other words, no liability exists as to the contractor if the work was performed in the manner required by the contract. Apparently defendant premises its contention on Section 35 of Article VI of the State Constitution, and also on a principle, supported by numerous authorities, to the effect that such a contractor is not liable for damages resulting as a necessary incident to work required to be performed by a contract with a sovereign power.

Though use of explosives may have been in contemplation of the contracting parties and may have been, and probably was, necessary in the performance of the work called for by the contract, nothing appears which would indicate that the manner of such use was not left wholly to the judgment and discretion of defendant, or that the work required to be done by the contract could not have been done in a manner which would not have occasioned damages to plaintiffs' property. The absence of any such provision is merely noted, and no implication is intended that the State, by

any such provision, would have the right or power to extend its immunity by contract, or otherwise.

The question of the right of such a contractor to the immunity from liability afforded the State by the constitutional provision has never been decided by this Court and, insofar as we have been able to determine, never discussed. The right of the State to immunity from suit, however, has been before the Court in numerous cases, including *Hope Natural Gas Co. v. West Virginia Turnpike Commission*, 143 W. Va. 913, 105 S. E. 2d 630; *Walter Butler Building Co. v. Soto, Tax Commissioner*, 142 W. Va. 616, 97 S. E. 2d 275; *Ward v. The County Court of Raleigh County*, 141 W. Va. 730, 93 S. E. 2d 44; *Douglass v. Koontz, Tax Commissioner*, 137 W. Va. 345, 71 S. E. 2d 319; *Van Gilder v. City of Morgantown*, 136 W. Va. 831, 68 S. E. 2d 746; *Hamill v. Koontz, Tax Commissioner*, 134 W. Va. 439, 59 S. E. 2d 879; *State of West Virginia by Davis v. Ruthbell Coal Co.*, 133 W. Va. 319, 56 S. E. 2d 549; *Stewart v. State Road Commission*, 117 W. Va. 352, 185 S. E. 567; *State v. George*, 116 W. Va. 465, 181 S. E. 713; *Fidelity & Deposit Company of Maryland v. Shaid*, 103 W. Va. 432, 137 S. E. 878. Though the State's constitutional immunity to suit extends to its governmental agencies or divisions, it affects only the liability of such agencies as to govermental functions. *Van Gilder v. City of Morgantown, supra; Ward v. The County Court of Raleigh County, supra; Hope Natural Gas Co. v. West Virginia Turnpike Commission, supra; Douglass v. Koontz, Tax Commissioner, supra*; 49 Am. Jur., States, Territories and Dependencies, Section 101; 17 M.J., State, Section 27. It may be of some significance that the Court has never held that the immunity granted the State is a full satisfaction of the rights involved. Only the remedy, the denial of the right to sue, is made plain. The long line of decisions of this Court relating to moral obligations of the State indicates, perhaps, that liability continues to exist, though it can not be enforced. See 81 C.J.S., States, Section 128.

The defendant herein makes no claim to the absolute immunity granted the State, but claims only that it is denied such immunity in the event it is found to have performed the work called for by the contract in a negligent manner. As to such question in other jurisdictions having constitutional provisions like or similar to the one existing in this State, the authorities are divided. It appears to be the unanimous rule, however, that where such a contractor performs such work negligently, he is not entitled to any governmental immunity, but is held liable in damages resulting from his negligence. See Annotation, 69 A.L.R. 489, 492.

Defendant relies heavily on certain statements contained in the opinions in the cases of *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A. 2d 888, and *Pumphrey v. J. A. Jones Construction Co.*, 250 Iowa 559, 94 N. W. 2d 737. We think the holdings of those cases do not support defendant's theory. In the *Valley Forge Gardens, Inc.* case, *supra,* the Court quoted with approval from a prior case to the effect that "It is hornbook law that the immunity from suit of the sovereign state does not extend to independent contractors doing work for the state. But it is equally true that where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damage that might result. 40 C.J.S., Highways, §212, p. 208."

In the *Pumphrey* case, *supra,* the Court held: "1. Even without negligence one who uses on his own lands something inherently dangerous and likely to damage his neighbor's property is liable for such damage." It is true that in that case the Court further held that the contractor was not liable for damages resulting from vibrations resulting from blasting operations conducted without negligence on the part of the contractor, but in that case the blasting was done under the direct control of representatives of the United States Government and, apparently, was considered by the Court as having been done by the government. See *Watson*

*v. Mississippi River Power Co.*, 174 Iowa 23, 156 N. W. 188, L.R.A. 1916D 101. There are, however, certain authorities supporting defendant's contention. See *Chargois v. Grimmett & James* (La.), 36 So. 2d 390; *Reynolds v. W. H. Hinman Co.*, 145 Me. 343, 75 A. 2d 802, 20 A.L.R. 2d 1360; *Newberry v. Hamblen County,* 157 Tenn. 491, 9 S. W. 2d 700; Annotation 69 A.L.R. 489.cf. *Tidewater Construction Corporation v. Manly,* 194 Va. 836, 75 S. E. 2d 500.

In *Scranton v. L. G. De Felice & Son,* 137 Conn. 580, 79 A. 2d 600, the Court, in a carefully considered opinion, in a case involving the question now before us, held: "3. General contractors engaged in construction of highway pursuant to a contract with state were not immune from liability for damages to a dwelling house and garage caused by blasting operations conducted in furtherance of the governmental project simply because those acts were done in pursuance of contract with the state." In the opinion the Court said: "As regards the third claim of the defendants, it is true that in some jurisdictions it is held that one who acts as the agent of government by virtue of a contract or otherwise is not liable for damages which result indirectly from what the government has commanded him to do. Benner v. Atlantic Dredging Co., 134 N.Y. 156, 161, 31 N. E. 328, 17 L.R.A. 220; Nelson v. McKenzie-Hague Co., 192 Minn. 180, 183, 256 N. W. 96, 97 A.L.R. 196. Although there may be some confusion arising out of dicta, *for the most part such cases do not go so far as to grant immunity from liability for damage which is so direct as to constitute something like trespass"*. (Italics supplied). See *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc., supra; Pumphrey v. J. A. Jones Construction Co., supra;* Annotation 92 A.L.R. 741. In 35 C.J.S., Explosives, Section 8 (June, 1960 Vol.), it is stated: "As blasting is considered intrinsically dangerous and ultrahazardous, where it is negligently done, the person responsible is liable for ensuing injury to the person or property of another; and as a general rule, although there is

some authority to the contrary, one lawfully engaged in blasting is liable, irrespective of negligence, for personal injuries or property damage sustained either as a result of casting material on adjoining land or as the result of concussion.''

The contention of defendant to the effect that it is entitled to immunity from liability for the reason that the injuries suffered by plaintiffs were necessary and incidental to the proper performance of the contract with the governmental authorities is reflected clearly by the statement found in 43 Am. Jur., Public Works and Contracts, Section 83, as follows: ''As a general rule, a private contractor in the construction of a public improvement under a contract with duly authorized public authorities is not liable for any injury, direct or consequential, to owners of private property that may result as a necessary incident from the prosecution of the work in a proper manner, which would otherwise amount to a nuisance. The theory is that one who contracts with a public body for the performance of public work is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract, where he is not guilty of negligence. In other words, when the act or failure to act which causes an injury is one which the contractor was employed to do and the injury results not from a negligent manner of doing the work, but from the performance thereof, the contractor is entitled to share the immunity from liability which the public enjoys, but he is not entitled to the immunity of the public from liability where the injury arises from the negligent manner of performing the work * * *''. As will be noticed from the text quoted, the immunity from liability of such a contractor as defendant, to which the rule refers, is related only to such injuries as are ''direct or consequential'', and which may result ''as a necessary incident from'' the performance of the contract. Thus, to illustrate, in *Newberry v. Hamblen County,* 157 Tenn. 491, 9 S. W. 2d 700, a case relied

on by defendant, the alleged damages were occasioned by blasting for a roadway to a parcel of land which had been acquired by eminent domain, and recovery in that proceeding included not only the value of the land acquired, but the "incidental damages" to the residue. In such circumstances, the contractor, of course, could not be required to compensate the property owner for the "incidental damages" paid for in the eminent domain proceeding by the governmental authority. See *Watts v. Norfolk & Western Railroad Co.*, 39 W. Va. 196, 19 S. E. 521; 45 Am. St. Rep. 894; 23 L.R.A. 674; *Tidewater Construction Co. v. Manly*, 194 Va. 836, 75 S. E. 2d 500.

Another case relied on by defendant as supporting its contention here being considered is *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A. 2d 888, involving damages alleged to have resulted to plaintiff's property from natural erosion from a large fill constructed by defendant across a stream, pursuant to a contract with the State Highway Bridge Authority. The fill was constructed in rigid conformity with the specifications, made a part of the contract, without negligence on the part of the contractor. In holding the contractor not liable for the damages, the Court said: "The foreseeable effects of erosion on the fill in the vicinity of the stream was a matter for the Authority to contemplate and guard against. In Nelson v. McKenzie-Hague Co., 192 Minn. 180, 189, 256 N. W. 96, 100, 97 A.L.R. 196, the Supreme Court of Minnesota pertinently said, —'That the state itself may have proceeded wrongfully in not foreseeing the consequential damage to plaintiffs' property and making provision for its compensation supports not at all the conclusion that either the highway commissioner or defendant [contractor] has committed wrong in proceeding with the work in the only way it could be done. Having committed no wrong, defendant should not be subjected to liability. It is not saved by the state's immunity from suit, but by its own innocence of wrongful acts resulting in liability as for tort.'"

The type of cases to which the principle applies is further illustrated by the authorities which grant immunity to municipalities as to "consequential injuries occasioned an adjoining owner by an alteration in the grade of a street where it acts under proper authority without negligence" or, in fact, as to any lawful establishment or maintenance of a street, or the performance of any purely governmental function. 63 C.J.S., Municipal Corporations, Section 1227. Even in such cases, of course, the action of the governmental agencies can not amount to a taking or damaging of property, within the meaning of the applicable constitutional provision. See *French v. City of Bluefield*, 104 W. Va. 129, 139 S. E. 644; *Ray v. City of Huntington*, 81 W. Va. 607, 95 S. E. 23, L.R.A. 1918D 931.

The authorities considered, we think, are sufficient to make it clear that the immunity here claimed by defendant relates only to such injuries as are necessary, incidental or inherent in the exact performance of the work called for by the contract, not to those injuries which are, in effect, separated or disconnected from such work. It can hardly be argued that the contract involved in the instant case contemplated, or that the parties thereto could have foreseen, the destruction or damage to the property of plaintiff eighteen hundred feet or farther from the point of the operations, or that such destruction or injuries were a necessary or an unavoidable incident of the performance of the contract. To conclude otherwise would, in effect, permit a contractor, or even the governmental authority, to shake down residences of every individual citizen within eighteen hundred feet of any highway where such construction is in progress, though not necessary or incidental to the work required to be performed, without liability. Surely such a result is not supported by any reason or authority, in a land of free government, where individual property rights are considered of prime importance.

The judgment of the Circuit Court of Cabell County complained of must be affirmed.

*Affirmed.*