GARDEN, JUDGE:
Claimants are the owners of a 20-acre tract of land situated on the south side of Route 10/1, about three miles from Sherman in Jackson County, West Virginia, purchased by them in December of 1972. In September and October of 1974, the respondent in order to correct a bad slide on the north side of Route 10/1 conducted blasting operations for a period in excess of six days. Respondent thereafter deposited the slide material and additional earth that they removed from the hillside where a bench was constructed on the property of the claimants. 'The material deposited orr -the' claimants’ property covered an area of over three acres. The respondent, after dumping this earth on claimants’ property, graded the same but since that time, this fill has slid causing further damage to claimants’ property and also destroying a number of trees.
While permission to dump this material had apparently been given by claimants, the respondent neither secured a written temporary construction easement nor has it ever paid claimants for the resulting damage to their property. Claimant, Wilmer W. Teets, testified that when respondent would perform the blasting, their home situated on their property would shake and that several days after the blasting operations were completed, he noticed that cracks were appearing above the door sills and that the floor and foundation were also cracked. Prior to the work performed by the respondent, the claimants had drilled a well on their property which was performing in a satisfactory manner. Two days after the blasting operations were completed this well went dry, and it was necessary for the claimants tt> have-another well drilled to a deeper depth at a different location on their property.
*226 Martin L. Bush, the survey crew chief for the maintenance division of District 3 in Parkersburg, Rossie Parsons, the foreman for respondent on this particular job, and Raymond I. Casto, a claims investigator for respondent, testified on behalf of respondent. All of these witnesses testified that in their opinion the blasting operations did not cause the alleged damage to the claimants’ property. This was based principally on the fact that a residence within a much closer distance from the blasting operations received no damage, and that consequently, in their opinion, the Teets property which was located over 900 feet from the blasting operations could therefore not have suffered damage as a result of the blasting.
With this conclusion we disagree. Particularly in view of the fact that this Court has consistently followed the rule of law established by our Supreme Court in the case of Whitney v. Ralph Myers Contracting Corporation, 146 W.Va. 130, 118 S.E. 2d. 130 (1961), which held that a person conducting blasting operations will be liable for damage caused by such blasting even if the blasting operations were conducted without negligence on the part of the person performing the blasting. We are of opinion in view of the testimony of the claimant that the blasting operations did in fact cause this damage and that the claimants are entitled to an award. Because the well driller was committed to other drilling jobs, the claimants were required to have water hauled for a period of six months at a total cost of $194.40. The driller charged the claimants $2,474.00 for drilling the new well, and an expense of $47.64 was incurred in order to dig a trench to accomodate the electric conduit running from the home to the new well house. In respect to the damage to the real estate and to the home, the measure of damage of course is the difference between the fair market value of the property prior to the blasting operations and the fair market value of the property after the blasting operations have been conducted. Konchesky v. S. J. Groves & Sons, Inc., 148 W.Va. 411, 135 S.E. 2d. 299 (1964). In order to support this portion of their damage claim, the claimants introduced a report from one Charles E. Keefer, an associate of Lee Mac Associates, Inc., in Ripley, West Virginia. Mr. Keefer’s report reflected that he was of the opinion that approximately 11 acres of the claimants’ property had been damaged, and that it was his opinion that this property, prior to the work performed by respondent, was worth $425.00 per acre. He thus multiplied this figure by the 11 acres and concluded that the damage amounted to $4,675.00. The problem with this report is that *227 it obviously eliminates any value whatsoever to the 11 acres, and even though damaged, this Court is of opinion that the same did have at least some value. A subsequent report was filed indicating that it would cost approximately $1,500.00 to repair the damage to the residence of the claimants. On the other hand the respondent had an appraisal of the property conducted by John W. Campbell, Jr., of Charleston, West Virginia. This report was most comprehensive, and Mr. Campbell reflected therein that it was his opinion that the difference between the fair market value of the property before the blasting and the fair market value of the property after the blasting was in an amount of $6,500.00. This report clearly reflects on its face that the damage to the residence was also taken into consideration in arriving at the $6,500.00 figure.
We are therefore of the opinion that the claimants are entitled to an award representing the $6,500.00 difference in value in respect to the real estate and residence, the expense of hauling water in the amount of $194.40, the expense of digging the conduit trench in the amount of $47.64 and the cost of drilling the new well in the amount of $2,474.47, or a total of $9,216.51, and we therefore make an award to the claimants in that amount.
Award of $9,216.51.